S. H. HAIRSTON ET AL. *v.* MRS. M. M. MONTGOMERY.

[59 South. 793.]

1. TRIAL. *Evidence after resting. Insufficient evidence. Landlord and tenant. Appeal. Judgment in supreme court. Code 1906, section 4919.*

Where a landlord brings suit against his tenant on a˙rental contract and a sworn account and the tenant denies the account under oath and on the trial of the case the landlord offers no other evidence than the rental contract and the sworn account, so denied, the court should have granted a peremptory instruction for the defendant.

2. SAME.

Where the court in such case refused the peremptory instruction and thereupon both sides introduced evidence the case should then be decided upon all the evidence adduced and the error committed by the court in refusing the peremptory instruction for the tenant, when the landlord first rested his case was cured.

3. LANDLORD AND TENANT. *Leases. Rights of the parties.*

Where the lease of the original tenant provided that the landlord should furnish water for the leased premises and the tenant

sublet the premises under a contract of lease providing that it should be subject to all the terms of the original contract of lease. In such case the sublease assumed all the burdens and became entitled to all the benefits of the original lease, and where the tenant released the landlord from the provisions of his lease in regard to furnishing water, such tenant must make good to the sublessees any damages they may have sustained by reason thereof.

4. PEREMPTORY INSTRUCTION. *Verdict of jury.*

Where a peremptory instruction is granted it is not necessary for the jury to retire and actually find the verdict directed, but the court should simply render judgment as if upon verdict found.

5. APPEAL AND ERROR. *Disposition of case on appeal. Code* 1906, *section* 4919.

Under Code 1906, section 4919, so providing, the supreme court on reversing a judgment of a lower court should render such judgment as the court below should have rendered, unless it be necessary, in consequence of its decision, that some matter of fact be ascertained, or damage be assessed by a jury, or where the matter to be determined is uncertain.

APPEAL from the circuit court of Lauderdale county. HON. JNO. L. BUCKLEY, Judge.

Suit by Mrs. M. M. Montgomery against S. H. Hairston et al. From a judgment for plaintiff, defendants appeal.

The facts are fully stated in the opinion of the court.

*V. W. Gilbert,* for appellants.

We submit that the court erred in not excluding the itemized statement offered by the plaintiff and in not giving a peremptory instruction when the appellee rested her case. This was a suit based on a contract and not on an open account. The basis of the suit was the contract entered into on the —— day of June, 1908, the gist of the suit being the alleged breach of the contract in that the appellants had not complied with the terms of the contract by paying the monthly rentals therein specified, viz.: Forty-five dollars per month. Section

1978 of the Code of 1906, therefore, had no application. It was not a suit on an open account. It was purely ,a suit on a contract and when the appellee failed to show by evidence that the contract had been breached, the law presumed its fulfillment and the appellee was without standing in court.

Is it necessary to cite authority on the elementary rule that the burden of proof is on the plaintiff to show by competent evidence a breach of the contract sued on? The only instance in which an affidavit entitles the plaintiff to judgment is in suits on an open account, and then only when there is no counter affidavit denying the correctness of the account so evidenced by an affidavit. In the case at bar, there was a counter affidavit. That of itself precluded the appellee from a judgment without proof of her items. But the counter affidavit in this case was superfluous, as was the affidavit by the plaintiff.

This suit was brought before a justice of the peace. Suppose that the amount sued for had been in the jurisdiction of the circuit court and the plaintiff had been compelled to file her declaration; would she not have set forth his contract and alleged the breach of it? · Would it not then have been incumbent upon her to prove it by competent and sufficient evidence?

We, therefore, submit that the appellants were entitled to a peremptory instruction when the appellee closed her case.

There is no contradiction nor conflict of testimony on the question of the Hairstons being ignorant of this contract releasing the railroad from furnishing water. By express stipulation the provisions of the original contract was made a part of the contract between appellant and appellee. Will a court of law aid and assist the appellee to profit by her own wrong? Can the appellants be thus overreached and the law allow them no redress? Will the law permit her to keep the money paid her,

thirty-three dollars, which appellants believed the railroad could be forced to refund him? There was no question here for the jury and the court should have instructed for the defendant.

Yet, notwithstanding the undisputed testimony that the contract with Mrs. Montgomery was entered into subject to the old original contract, which required the railroad to furnish the water, and notwithstanding she had entered into a subsequent contract whereby she released the railroad from that obligation, and notwithstanding the Hairstons were in utter ignorance of this release of the railroad, and notwithstanding that Cox, her agent, patted them on the back and insisted that they go after the railroad and hereby led them into the contract; yet the court lent an attentive, sympathetic ear to the claim of appellee that she didn't think it was right for her to pay the water rentals, and granted her instructions telling the jury that, "Unless they believe from a preponderance of the evidence that Mrs. Montgomery agreed with Dr. Hairston to accept the paid water bills in part payment of the rent and without protest, then they will find for the plaintiff the full amount sued for."

And in order that there might be no remaining doubt in the minds of the jury of the opinion of the court that the Hairstons were trying to cheat and wrong the appellee, the jury were told that if they believed that Mrs. Montgomery protested against the deduction of the water rents then they would find for her.

Again, notwithstanding the undisputed fact that at the time the Hairstons contracted with the appellee their contract referred to the contract whereby the railroad was obligated to furnish the water; and notwithstanding Mrs. Montgomery had agreed to pay the water rents, and notwithstanding the Hairstons were not advised of this fact nor knew anything about it, yet the court charged the jury that, "The burden is on the defendant to show by a preponderance of evidence that the lease

contract was changed (not a line of evidence of any change) or modified and that plaintiff agreed to pay the water rents,'' etc., then to find for the defendant.

Again, in the face of the undisputed fact that at the very moment she executed the contract it was breached by the secret contract with the railroad whereby she was to pay the water rents, yet, the court gave her this double-barreled peremptory instruction that the defendant ''is not entitled to recover anything from plaintiff on his offset nor is the plaintiff liable under the proof for any part of the water rents unless she agreed to be liable subsequent to the execution of the leased contract sued on.''

And thus, by one stroke of the pen and by one wizard word the contract of December 2, 1903, was stricken from the record and the consideration of the jury, and howsoever much the Hairstons may have been misled and overreached they can complain of nothing prior; can grumble just a little about subsequents. The Hairstons are not entitled to their offsets, and since they have no offsets except for water rents, therefore, find for the defendant; this is the logic of the instruction.

We submit that if there were no question in this case of any secret contract, that under the plaintiff's own testimony she is estopped to recover this money. As she says she ''protested and accepted.'' She allowed these deductions for nine months, without protest according to Dr. Hairston's testimony, and according to her own testimony she accepted but didn't think it was right for her to have to pay it. This was an agreement with misgivings, but no protest. It was just and right for her to pay it, and we most respectfully submit that the law compels her to pay it.

*Amis & Dunn,* for appellee.

Our contention is that the introduction in evidence of the itemized bill of particulars sued on and the original

contract between plaintiff and defendants, sufficiently made out the plaintiff's case, at least *prima facie*. However, if we be mistaken as to this, it is not too late for the defendants to complain, for the reason that by waiving their exception to the action of the court in overruling their motion to exclude, and thereafter introducing further testimony, it fully and clearly appeared that the defendants were due the plaintiff a rental for the stock pens under the terms of. the contract of forty dollars per month from June 1, 1908 to January 1, 1909, and a rental of forty-five dollars per month after January 1, 1909. It also appeared that the defendants paid to the plaintiff the full rental of forty dollars a month from June 1, 1908 until January 1, 1909, without deducting anything for the water rent at all, and that after that, they paid her only thirty-nine dollars a month instead of forty-five dollars, and that the difference of six dollars a month was the amount of the water rentals which is the subject of controversy here. So that the case was fairly presented in the court below and is fairly presented here. The sole controversy is as to who is liable under the facts of this case for the payment of the water rentals.

Briefly stated, our contention is that there is no testimony in the record anywhere to show that the railroad company ever performed their part of the mutual contract of date December 2, 1903. There is no testimony in the record as to who laid the pipes from which the water at the stock pens is obtained; or who maintained or still maintains the same. There is no testimony to show whether or not it was a one-inch pipe or what sort of a pipe it was; there is no testimony to show whether it connects with the mains of the Meridian Water Works Company. There is no testimony to show how the water was supplied to the stock pens prior to the making of the contract of date December 2, 1903. So far as the record shows, the water was supplied then just as it is

102 Miss.—24.

now, through the same pipe, and from the same source
of supply. There is no evidence of any change in the
manner, method or source of supply at all. The contract
of date December 2, 1903, does not, of itself, stipulate
any time for its performance, and there being no evi-
dence that it was ever performed, it appears to us that
the railroad company is, still liable to furnish all the
water under the terms of the original contract of 1887.
Certainly it would be true if the railroad company were
sued on the contract of 1887 for damages for a failure
to furnish the water, that the railroad company would by
way of defense, be required not only to prove the exe-
cution of the contract of December 2, 1903, but also in
addition thereto to prove its performance of that con-
tract, and if they failed to do so, that judgment would go
against them. Certainly, the same thing will be true in
this case where the defendants are undertaking to saddle
this burden upon the plaintiff on the idea that she has
assumed and undertaken to discharge the duty and obli-
gation of the railroad company.

The court below took the view that the proof in the
case was sufficient to show that the plaintiff had assumed
the burden of the railroad company, touching the sup-
ply of water; and taking that view, submitted only one
question to the jury, and that was, as to whether or not
there had been a subsequent modification of the lease
contract between the plaintiff and defendants by which
the plaintiff agreed to accept a receipted water bill each
month in part payment of the amount due under the con-
tract. This was the question submitted to the jury under
the instructions, and we submit that the instructions,
when confined to that view of the case, are harmonious
and properly submitted that question to the jury. The
jury found for the plaintiff on the disputed question of
fact and the case should be affirmed. See *Stockton* v.
*George,* 7 H. 172; *Coleman* v. *Rose,* 5 H. 460; *Green* v.
*Finucane,* 5 H. 542; *Liddell* v. *Sims,* 9 S. & M. 596; *Wad-*

*lington* v. *Hill,* 10 S. & M. 560; *Clopton* v. *Bolton,* 1 Cush. 78; *Pegues* v. *Moseley,* —— ——; *Robinson* v. *Harbour,* 42 M. 795; *Lee* v. *Dozier,* 40 M. 477; *Cook* v. *Guice,* 6 Cush. 242; *Eckford* v. *Halbert,* 1 George 273; *Klyce* v. *Broyles,* 8 George, 524; *McAllister* v. *Moore,* 1 George, 258.

SMITH, J., delivered the opinion of the court.

On the 4th day of June, 1887, the Alabama Great Southern Railroad Company leased John B. Ewing, John A. Hart, and W. A. Baskette certain land for the purpose of erecting and maintaining a stockyard, which contract contained a number of mutual covenants, among them being one on the part of the railroad company as follows: "The party of the first part will furnish at all times a sufficient supply of good water, and will also provide all sidetracks necessary for the proper handling of business." Appellee, having succeeded to the rights of the lessees in this contract, in June, 1908, leased the premises to appellants, who agreed to pay therefor the sum of forty dollars a month until the 1st day of January, 1909, and from that date to the 1st day of June, 1912, the sum of forty-five dollars per month. The contract by which this property was leased by appellee to appellants specifically provided that it should be subject to all provisions of the contract hereinbefore referred to, by which the property was leased by the railroad company to Ewing, Hart, and Baskette. Pursuant to this contract appellants entered into possession of the property, and to their surprise were compelled, in order to obtain water, to pay the bills presented by the water company which furnished it. They immediately took the matter up with the railroad company, and after considerable delay the company's attorneys exhibited to them a contract, entered into in 1903 between appellee and the railroad company, which contract contained the following stipulations: "The said company agrees to fur-

nish, lay, and maintain a one-inch water pipe from the Meridian Waterworks Company main to the stockyards of said company near Meridian, Mississippi, for the supply of water to said stockyards, and to make all necessary connections. Mrs. Montgomery agrees, for herself and her assigns and personal representatives, that she and they will pay the water rents or rates for all water so supplied.''

In the meantime appellants had paid, at the end of each month, the full amount of rent agreed upon; but after ascertaining the existence of this contract they deducted each month from the rent due the amount paid by them for water, and delivered to appellee a check for the difference and the receipted water bill. She at first declined to accept the check for this balance, claiming that she ought not to be compelled to pay for this water, and there is a dispute between her and appellants as to whether or not she finally agreed to pay for it. But, be that as it may, appellants, after ascertaining the existence of this lease contract, deducted from the amount due appellee each month for the rent of the property the amount of the water bills paid by them. The contract by which appellants leased this property contained no reference to the contract by which appellee had released the railroad company from its obligation to supply the stockyards with water. They themselves were not aware of its existence, and appellee seems from her evidence to have forgotten it for the time being.

In October, 1911, this suit was instituted to recover from appellants the amounts deducted by them each month from the rent due, which then amounted to the sum of fifty-six dollars and sixty-three cents. In instituting her suit, appellee filed a sworn statement showing the amount of rent due each month and the amount of money actually paid her each month by appellants, who thereupon filed a counterclaim and affidavit denying the correctness of appellee's account and setting up the

various amounts paid by them each month for water, including the bills paid by them and not deducted from the rent due appellee, which amount to thirty-three dollars, and asked for judgment over against her therefor. The case, coming to the circuit court on appeal, resulted in a judgment for appellee.

The first error alleged by appellants to have been committed in the court below was the refusal of the court to exclude the evidence offered by appellee when she rested her case in chief. This evidence seems to have consisted simply of appellants' rent contract, and the sworn account filed by appellee before the justice of the peace. This account, having been denied under oath, proved nothing; consequently, the only evidence before the court when appellee rested her case was the contract by which appellants had agreed to pay her so much each month as rent for the property. There were no facts in evidence indicating that this rent had not been paid; consequently, there was no evidence on which to predicate a verdict for appellee. The court, therefore, erred in not excluding her testimony.

This error, however, cannot now be availed of by appellants, for the reason that thereafter they introduced testimony themselves, and the case must now be decided on the whole evidence. After all the testimony for both sides had been introduced, appellants requested the court to charge the jury to find for them in the sum of thirty-three dollars, which instruction was by the court erroneously refused.

Since the contract by which appellants leased this property from appellee provided that it should be subject to all the terms of the contract by which the property was originally leased by the railroad company to Ewing, Hart, and Baskette, they thereby assumed all of the burdens and became entitled to all of the benefits thereof. One of these benefits was that water would be furnished them by the railroad company. They were

deprived of this benefit by the act of appellee herself in releasing the railroad company from its obligation to furnish water for the stockyard; consequently, she must make good to them any damages they may have sustained by reason thereof.

Had the peremptory instruction requested by appellants been granted, it would not have been necessary for the court to have gone through the useless formality of having the jury to retire and actually find the verdict directed; but the court should simply have rendered judgment as if upon verdict found.

Since section 4919 of the Code provides, "In case the judgment, sentence, or decree of the court below be reversed, the supreme court shall render such judgment, sentence, or decree as the court below should have rendered, unless it be necessary, in consequence of its decision, that some matter of fact be ascertained, or damages be assessed by a jury, or where the matter to be determined is uncertain," it becomes our duty, upon reversing the judgment of the court below, to render judgment here for appellants in the sum of thirty-three dollars, with legal interest thereon from the date of the various items making up this amount.

Reversed, and judgment here.

*Reversed.*