Yazoo & Mississippi Valley Railroad Co. et al. *v.* ·W. G. Pope.

[61 South. 450.]

1. Carriers. *Live Stock. Appeal and error. Disposition of case.*

Where mules are injured while being carried by a railroad company, a recovery therefor cannot be had, if it appears that the train met with no accident, was properly handled and the car in which the mules were being carried was suitably and properly equipped; when these facts are shown the court should give a peremptory instruction for the carrier.

2. Same.

In such case where the jury in the lower court rendered a verdict for the plaintiff, the supreme court, on appeal, will reverse the case and under section 4919, Code 1906, so providing, will enter a judgment for the defendant as should have been done in the court below.

Appeal from the circuit court of Holmes county.
Hon. E. V. Hughston, Special Judge.

Suit by W. G. Pope against the Yazoo and Mississippi Valley Railroad Company and others. From a judgment for plaintiff, defendants appeal.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes,* for appellants.

Appellee in his brief virtually admits that it is conclusively shown that the car in which this mule was being transported was carefully and properly handled up until it reached Mounds. But appellee contends that our defense must fail because he says there is no testimony as to how the car was handled in the yards at Mounds and in support of his contention he cites the case of *I. C. R. R. Co.* v. *Teams,* 75 Miss. 147.

If this is the best argument that appellee can advance, he might as well concede his defeat. The *Teams case,* 75 Miss. 147, the very case upon which appellee relies, is the authority which drags appelle down.

We have examined the original supreme court record in the Teams case and find that in that case Teams' attorney advanced the very same argument which appellee advances here, to wit, that there was no testimony to show how the car containing the mule was handled while being switched at the various junction points. But with Teams' attorney strongly urging this point and with the record showing that there was no testimony as to how the car was handled at the junction points, this court in its opinion said: " . . . How the animals were hurt, or by what means, nowhere appears. It was made plain by every conductor who had charge of the car in which the mules were transported from East St. Louis to Lexington, that the train met with no accident on the route, and that it was safely and properly handled. Indeed, the evidence is that the car in which these mules were hauled, together with all cars in front of it, as well as several in rear of it, was supplied with air brakes and automatic couplings, whereby the ordinary bumping and jolting of freight cars was reduced to the minimum. It was shown that there was no defect or contrivance in the car itself which could have produced the injury to the mules.

"There was the evidence for the appellee (Teams) of some witnesses to the effect that, in the opinion of the

witnesses, the mules, loaded and crowded in the car as they were shown to have been, could not have injured themselves. But common observation and experience of mankind at all familiar with the capacity for gymnastics on the part of these hybrids, warn us not to place reliance in mere opinions of witnesses on this point. If they did not inflict injuries on themselves, how were they inflicted? The speculation, however, is profitless, for, if the railroad company proved reasonable care in transporting the animals, no liability attached to it, and we have seen that this burden was successfully borne by the railroad. . . . . The peremptory instruction asked by the appellant should have been given.''

After carefully examining the Teams case, as it was reported in the Mississippi Reports and also as it was presented to this court in the original court record we have found that that case is on allfours with the case at bar. In both cases that is in the Teams case and the case at bar, there was a shipment of mules from St. Louis to Lexington, via Mounds. There was the same testimony as to the proper condition and equipment of the car in which the mules were transported. There was the same testimony by the conductors as to the careful and proper handling of the cars and the absence of any accidents or delays on the route. There was the same argument by plaintiffs' counsel that there was no testimony as to how the cars were handled at Mounds and that, therefore, the railroad company had failed to show the proper handling of the cars during the whole time the mules were on the journey. But in spite of the plaintiff's arguments, this court held that the railroad company had successfully borne the burden of showing reasonable care in handling the shipment and that the peremptory instruction for the railroad company should have been given.

Therefore, we are confident that this court will follow the law as laid down by it in the Teams case, and reaffirmed by this court in the *Bigger case,* 66 Miss. 319;

and again in the case of *R. R. Co.* v. *Davis & Levy*, 34 So. 674; and again, not later than last Monday in the case of *Suddoth* v. *I. C. R. R. Co.*, not yet reported.

In the present case there is overwhelming proof that the car in which this mule was being transported was a "Street's Western Stable" car, which is the best stock car made; that this car was in proper condition outside and in; that it was fully equipped with all modern appliances, including automatic couplers, containing springs which reduced the bumping and jolting to a minimum; that there were no accidents or delays on the route; that the car was carefully and properly handled throughout the trip to Mounds, at which place the mule was found dead with no signs on its body, or elsewhere as to what caused its death. It is plain to us that this mule died a natural death.

The appellee argues that the absence of marks, or bruises, on the body shows that the mule was killed by rough handling of the car. We submit that, if the mule was killed by that means, there would have been many cuts and bruises upon its body. We think that the absence of such cuts and bruises, so far from proving that the mule was killed by the rough handling of the car rather proves that his death could not have come about in that manner.

Appellee says that the fact that the mule was found with its neck doubled under proves that the car was handled roughly and that the mule was thereby thrown to the floor and its neck broken, and that it died on account of the broken neck.

All of this is mere supposition on the part of the opposing counsel. To begin with, it was not proven that the mule's neck was broken. No veterinary examined the mule. The witnesses were asked the specific question, "Was the mule's neck broken?" and they answered that they did not know; that they could not tell. That being the testimony, you have no right to consider the idea of

the broken neck, and when you eliminate the idea of the broken neck, appellee's argument is pitifully bare.

We submit that a mule dying from some illness might, even while the car was standing still, fall with its head under its body, and especially so where there were other animals, on the side of the car, for it to bump against in falling, or if not that then, that after the mule had, in its illness, sunk to the floor, it might, in the throws of death, have gotten its head under its body.

We say that there is a total lack of explanation of what caused the death of the mule and since the appellant has met the burden of showing reasonable care in handling the shipment it is plain that this court under its previous rulings, must reverse this case.

*Hill & McBee,* for appellee.

We submit from all the evidence in this case that the jury were warranted in drawing this conclusion from the evidence, to wit:  That the mule lying in the position in which he was discovered was killed by reason of the fact that his neck was broken; that this, in fact, is the most logical conclusion to be drawn from the testimony of the witness Bartholomew; and that the breaking of the mule's neck was not caused by its being kicked or injured by the other animals in the car with it.   There is no showing in the record that the car was not negligently handled between the time of its arrival at Mounds and the time that the mule was discovered to be dead.

The jury, as men possessed of ordinary knowledge, taking into consideration what "common observation and the experience of mankind familiar with the capacity for gymnastics on the part of this hybrid," must have known that no mule, dying a natural death, ever lies down with its head under it; they must have known that this mule was not kicked on the neck and its neck broken, if there were no scars or marks to show for it; that the jury had a right to use such knowledge and observation was clearly

declared in *Railroad Co.* v. *Teams*, 75 Miss. 149. By this record it does not appear from the time of the arrival of the car at Mounds until the discovery of the dead mule how the car was handled. If it was necessary for the railroad company to explain how it handled the cars while switching them in St. Louis it was necessary to explain how they were handled at Mounds. If they were not handled at Mounds this should appear from the record. As authority for this statement we cite *L. N. O. & F. Railroad Co.* v. *Bigger*, 66 Miss. 322; *Railroad Co.* v. *Teams*, 75 Miss. 149; *I. C. R. R. Co.* v. *Davis & Levy*, 43 So. 674; *Chicago Railway Co.* v. *Abels*, 60 Miss. 1023; *Railroad* v. *Tupelo Furniture Co.*, 67 Miss. 35; *Jordan* v. *The G. & S. I. R. R. Co.*, 58 So. 595, these cases all maintaining that the burden is on the company, in an action for damages en route to show that the injuries were not caused by its negligence.

By the record it appears that the railroad company took possession of this car at 6:30 p. m. They explained to us how they handled it until 2:55 a. m., covering a period of eight hours and twenty-five minutes. The proof then fails to show how the car was handled from 2:55 to 11 a. m. We submit that an explanation as to how the car was handled for the first half of the time it was being transported by the railroad company is not an explanation of how it was handled for the second half of the time that the company had it in charge; that called on as they were to show that they were not negligent during the whole time, that proof that they were not negligent during half the time is not sufficient.

By the testimony of the conductor the car containing this shipment of live stock was left by him standing in his train at Mounds upon his arrival there. By the testimony of Yardmaster Givins when he first saw the stock and discovered that the mule was dead the two cars, to quote from his testimony, "had been set out of 12263 on the south end of what we call the manifest yard," How

these cars were handled when they were taken from the train on which they arrived at Mounds and how they were set out where the witness says they were and whether negligently handled or not during such operations does not appear by the record. Hence, a conclusion of facts must be drawn from the testimony. The evidence not making it clear as to what caused the injury, it becomes necessary for the jury to say whether or not the defendant is liable.

"If the exact cause of the loss is not known and the carrier shows a performance of all the duties incumbent upon it, the presumption is that it was caused by inherent propensities of the animals, and the carrier is not liable, unless the nature of the injury and the circumstances under which it occurs render such a presumption unreasonable." 5 Am. & Eng. Ency. of Law, 469.

"Aside from these presumptions where the evidence is conflicting or where more than one conclusion may be drawn from admitted facts the question as to what cause produced the loss or injury is one to be determined by the jury from all the facts and circumstances surrounding the occurrence." 5 Am. & Eng. Ency. of Law, 469.

"So many different questions are integrated into the solution of questions of negligence that it is a rare case where it should be taken from the jury." *Laurel Mercantile Co. v. M. & O. Railroad Co.*, 87 Miss. 675.

We submit the case should be affirmed.

REED, J., delivered the opinion of the court.

This is a suit for the recovery of the value of one mule, missing from a shipment of mules and horses from East St. Louis, Ill., to Lexington, Miss. Appellee showed that the shipment of the animals was delivered to appellant, the Illinois Central Railroad Company, in good condition, and rested his case solely on the proof of the failure to deliver the mule at Lexington.

The railroad company showed that the animals were shipped in a stock car of the best class, and that the car

was carefully handled; that the train was properly equipped and handled, and in charge of experienced men; that there was no accident during the transportation, and no unnecessary jarring or jolting of the car. After the train reached Mounds, Ill., it was discovered that the mule sued for was dead in the car. A careful examination failed to show any marks or cuts upon the animal or any other thing to indicate the cause of its death. In fact, the cause of the mule's death is not shown in any of the testimony. All of the other animals in the car reached Lexington in good condition. The court refused to grant appellants a peremptory instruction.

It was decided in the case of *Railway Co.* v. *Teams,* 75 Miss. 147, 21 South. 706, that where mules are injured while being carried by a railroad company a recovery therefor cannot be had, if it appear that the train met with no accident, was properly handled, and the car suitably and properly equipped, and that when these facts are shown a peremptory instruction for the carrier should be given. It will be seen that the railroad company in this case proved all necessary facts to bring this case within the rule announced in the Teams case. Therefore the peremptory instruction asked by appellants should have been given.

We deem it our duty in this case to render the judgment here which should have been rendered in the court below. Section 4919 of the Code of 1906 provides: "In case the judgment, sentence or decree of the court below be reversed, the suprme court shall render such judgment, sentence, or decree as the court below should have rendered, unless it be necessary, in consequence of its decision, that some matter of fact be ascertained, or damages be assessed by a jury, or where the matter to be determined is uncertain." In the case of *Hairston* v. *Montgomery,* 59 South. 793, upon rendering the judgment in this court which should have been rendered in the court below, and in referring to the statute authorizing the

same, SMITH, C. J., said: "Had the peremptory instruction requested by appellants been granted, it would not have been necessary for the court to have gone through the useless formality of having the jury to retire and actually find the verdict directed; but the court should simply have rendered judgment as if upon verdict found."

The judgment of the court is therefore reversed and judgment is rendered here for appellants, the defendants in the court below.