HATTIESBURG CHERO COLA BOTTLING CO. *v.* PRICE.*

(In Banc,  May 10, 1926.)

[108 So. 291.  No. 25378.]

1. APPEAL AND ERROR.
    Supreme Court is authorized to grant new trial only when trial court has erroneously refused to do so.

2. APPEAL AND ERROR.  *Supreme court, on reversing judgment for injury on ground that appellant was entitled to directed verdict, will render judgment for appellant, notwithstanding material evidence was excluded, where appellee consented thereto, and failed to make application for continuance to procure alleged material witness (Code 1906, section 4919 [Hemingway's Code, section 3195]).*

    Under Code 1906, section 4919 (Hemingway's Code, section 3195), supreme court, on reversing judgment for personal injury on ground that appellant was entitled to directed verdict, will render judgment for appellant, notwithstanding trial court excluded material evidence, where appellee expressly consented thereto, and although failing to procure attendance of witness, alleged to be material, made no application either for continuance or delay of trial.

    ETHRIDGE and HOLDEN, JJ., dissenting.

*Corpus Juris-Cyc References:  Appeal and Error 4CJ, p. 1185, n. 56; p. 1202, n. 55 New.

On suggestion of error. - Suggestion of error overruled.

For former opinion, see 141 Miss. —, 106 So. 771.

*T. J. Wills,* for appellant.

The issue involved was the defective brake and its failure to hold.  There was not a scintilla of evidence be-

fore the jury that the brake was defective, not a scintilla
of evidence that it failed to hold, and not a scintilla of
evidence that it was ever applied.   There was no evidence
to support a finding of negligence against the defendant
and the peremptory instruction should have been given.
*Anderson* v. *Cumberland Tel. & Tel. Co.*, 38 So. 786; *N.
O. etc. R. R. Co.* v. *Enocks*, 42 Miss. 603; *Flora* v. *Amer.
Express Co.*, 92 Miss. 66, 45 So. 149; *G. & S. I. R. R. Co.*
v. *Wells*, 72 So. 194; *Lumber Mineral Co.* v. *Ramsher*,
54 So. 313; *I. C. R. R. Co.* v. *Cathy*, 70 Miss. 332, 12 So.
253; *Clark* v. *I. C. R. R. Co.*, 286 Fed. 915; *M. & O.* v.
*Gulf States Lumber Co.*, 92 So. 235.

This case should be reversed and judgment entered
here for the appellant company.

*Paul B. Johnson*, for appellee.

The only question for the consideration of the court in
this case is: Was there enough evidence offered by the
plaintiff to justify the jury in finding a verdict for him?

The testimony of the plaintiff, A. M. Price, undisputed-
ly shows that the brakes on the car in question had
been out of repair several times; that the last time, be-
fore the unfortunate accident, Mr. Price had reported
the dangerous condition of the brakes to the manager
of the defendant company who promised Price, using the
language of witness Price, that he would "look after it."

Witnesses Hutchinson and Long, both for the defend-
ant, testified that the brakes were not repaired between
the time witness Price complained that he reported the
defect and the time of the accident.   This much of the
testimony is undisputed.

From the reading of all the testimony this court will
readily see that the trial court was justified in submit-
ting the case to the jury, all of which was done under
the proper instructions.

The appellee is a young man of family; before the in-
jury he was strong, vigorous and healthy; now ruined

for life. The jury heard the testimony and they said that the appellant was responsible for the appellee's condition. They should have given him five or ten thousand dollars damages but they fixed the amount at two thousand dollars. Substantial justice has been done in this case, and we respectfully submit that the case should be affirmed.

*Wells, Stevens, & Jones* and *Paul B. Johnson,* for appellee, on suggestion of error.

The court erred in entering judgment here for the appellant instead of reversing and remanding the cause for a new trial.

There is some uncertainty in the minds of practitioners and there does not seem to be a uniform fixed rule for determining what cases should be remanded upon reversal. Broadly speaking, the supreme court, we submit, should never make final disposition of a case where the ends of justice would probably be best served by remanding the case. Another general proposition which we submit to be accurate is, that in all cases of reversal where the action is a civil suit for damages, the plaintiff in the cause is entitled to a new trial where the jury has ruled in his favor, and where there is any evidence which has been introduced or probably can be introduced in support of his claim. Here the plaintiff submitted his cause to the jury and won. If the circuit judge had indicated to the plaintiff that the evidence was not sufficient, the plaintiff would have had two options or legal rights: (1) To introduce any further possible testimony available; and, (2) To take a nonsuit. Before the court should enter a final judgment here, the court should be in a position to say that the plaintiff cannot in any event recover.

Furthermore, the record shows that the witness, Anderson, was temporarily absent at the time of the trial. The record affirmatively shows that he is a competent

and material witness. It is certainly within the discretion of this court to remand the case for a new trial. In support of our contention we cite a few authorities. The general rule is stated in 4 C. J. 1199. See also 2 R. C. L., par. 237.

Tested by this rule, the supreme court must say in the case at bar that it is absolutely impossible for the plaintiff to produce sufficient evidence to support his claim for damages. The record affirmatively shows that there is additional testimony available.

Inasmuch as the plaintiff has won his case, he should not now be penalized to the extent of denying him another chance simply because there was error in the proceeding which led to his first victory. *Young* v. *Cumberland County Educational Society* (Ky.), 210 S. W. 494, 6 A. L. R. 135; *Peters* v. *Eugene Poro,* 25 A. L. R. 617.

In reversing the Louisiana case of *Smith's Heirs* v. *Johnston,* 34 So. 677, the court on rehearing reconsidered the questions, but said: "But in the interests of justice and to give both sides the opportunity for introduction of further evidence, we have concluded to remand the cause."

We refer the court also to *Territory* v. *Howell,* 25 Hawaii, 320, per KEMP, J., quoting 2 R. C. L. 237.

*T. J. Wills, f*or appellant, on suggestion of error.

The question is raised that the court should not enter judgment but should reverse the case for a new trial. The question has recently been before this court and was considered on suggestion of error at some length and under circumstances where the court was called on to announce the policy of this court as distinguished from the rules of the federal court. This court held that where a peremptory instruction should have been granted in the court below, this court on reversing the case would enter the judgment that should have been entered in the court below. *G. & S. I. R. R. Co.* v. *Hayles,* 105 So. 458.

We submit that the opinion of the court, and each paragraph and sentence therein contained in reversing and dismissing this case, was correct and that the suggestion of error should be overruled.

ANDERSON, J., delivered the opinion of the court.

Appellee brought this action against appellant in the circuit court of the Second district of Forrest county to recover damages for a personal injury alleged to have been received by him while in the performance of his duty as an employee of appellant. There was a trial and verdict and judgment for appellee, from which judgment appellant appealed.

On January 25, 1926, in a memorandum opinion, Division B, reversed the judgment appealed from and rendered final judgment here for appellant. The judgment of the lower court was reversed upon the ground that under the evidence appellant was entitled to a directed verdict which had been requested and denied appellant. Thereupon appellee filed a suggestion of error.

Appellee's main contention in his suggestion of error, and the only one we think worthy of discussion, is that final judgment should not have been entered here for appellant, but the case should have been reversed and remanded for a new trial. This contention is based on the ground that the lower court erred in ruling out appellee's testimony as a witness in his own behalf to the effect that Anderson, the driver of the truck which caused appellee's injury, exclaimed immediately after the accident that the injury was caused by the brake on the truck not taking hold; the ground of appellee's recovery being that the brake was defective. It is argued also by appellee that the case ought to go back for a new trial so appellee may have another opportunity of procuring Anderson, the driver of the truck, as a witness in his behalf, by whom he would expect to prove that the brake on the truck was defective. Appellee contends that the

exclamation of Anderson, the driver of the truck, immediately after the injury, was part of the *res gestae,* and therefore could be testified to by appellee. Appellee's testimony as to Anderson's exclamation bearing on the cause of the injury was first admitted by the trial court over appellant's objection. Thereafter at the conclusion of the evidence the court of its own motion ruled it out. Appellee not only failed to except to that ruling of the court, but the record shows expressly consented thereto. It therefore appears that the testimony in question was ruled out on appellant's objection and with appellee's express consent.

.Appellee had process for Anderson as a witness in his behalf, but failed to procure his attendance. However, appellee made no application to the trial court either for a continuance or a delay of the trial for the purpose of procuring the attendance of Anderson. Should such a case go back for a new trial or should final judgment be entered here for the appellant? The question involves a construction of section 4919, Code of 1906 (Hemingway's Code, section 3195), which reads as follows:

"The supreme court shall hear and determine all cases properly brought before it at the return term, unless cause be shown for a continuance; and in case the judgment, sentence, or decree of the court below be reversed, the supreme court shall render such judgment, sentence, or decree as the court below should have rendered, unless it be necessary, in consequence of its decision, that some matter of fact be ascertained, or damages be assessed by a jury, or where the matter be determined is uncertain; in either of which cases the suit, action or prosecution shall be remanded for a final decision; and when so remanded, shall be proceeded with in the court below according to the directions of the supreme court, or according to law in the absence of such directions."

It will be observed that the statute provides that when a case reaches the stage of this case, the supreme court

shall render such judgment as the court below should have rendered—

"unless it be necessary, in consequence of its decision, that some matter of fact be ascertained, or damages be assessed by a jury, or where the matter to be determined is uncertain."

As we view the case in order to sustain appellee's contention, it will be necessary to overrule at least the following decisions of this court: *Hairston* v. *Montgomery,* 102 Miss. 364, 59 So. 793; *Y. & M. V. R. Co.* v. *Pope,* 104 Miss. 339, 61 So. 450; *Hines* v. *Cole,* 123 Miss. 254, 85 So. 199. Although not squarely deciding the question here involved, the same principle was recognized in *Davis* v. *Dantzler Lumber Co.,* 126 Miss. 812, 89 So. 148. In the Hairston case the court held that on reversing an erroneous judgment the supreme court should render the proper judgment where the facts are undisputed. In the Pope case it was held that, where under the evidence the defendant was entitled to a peremptory instruction, and therefore the plaintiff was not entitled to recover, the supreme court, upon reversing the judgment for the plaintiff, should render a judgment for the defendant. In the Cole case the court held that, in a case where the trial court should have directed the verdict for appellant, the judgment will be reversed because of its failure to do so, and, where the record presents no question of fact to be ascertained by a jury, final judgment should be rendered for appellant in the supreme court.

The authority of the supreme court to grant new trials is no broader than the authority of the trial courts. It is only when the trial court has erroneously refused to grant a new trial that the supreme court is authorized to grant one. We have held in this case that the trial court ought to have directed a verdict for appellant. If the trial court had done that instead of submitting the issues to the jury, would that court have been justified on a motion for a new trial by appellee in granting a

new trial upon the ground relied on now in this court for a new trial, namely, the ruling out of material evidence (conceding but not deciding that it was material) with the consent of both parties in connection with the expectation of appellee of procuring at another trial the testimony of Anderson, the absent witness?

It seems that to ask the question is to answer it in the negative.  Such a proceeding would open the door wide for litigants to experiment with the courts, although there is no indication in the record in this case that appellee has any such purpose.  It would be a license to litigants to try their causes by piecemeal with the hope of losing or improving them with each successive trial.  There must be an end to litigation.

The gist of appellee's claim that he ought to be granted a new trial is his supposed mistake in agreeing that the trial court rule out his testimony as a witness in his own behalf as to the statement of the driver of the truck touching the cause of the injury.  If that was a mistake, it cannot be corrected by this court.

Suggestion of error overruled.

*Overruled.*

ETHRIDGE, J. (dissenting).  I think the suggestion of error should be sustained to the extent of remanding the case to the court below for a new trial.  In the trial of the case it appeared that the witness Anderson was being sought by a process of the court, and they had the right to have the process continue until Anderson was procured, until the adjournment of the court, for the purpose of having his evidence on motion for a new trial, should it be necessary.  The plaintiff won, and it was therefore not necessary for him to make a motion for a new trial.  It appears that the court admitted the declaration of Anderson at the time of the injury herein involved, on the hearing, but excluded it before the case was submitted to the jury.

. On the rendition of the judgment of reversal the members of Division B, were of the opinion that this evidence was not admissible because not of the *res gestae;* but on suggestion of error, as I understand the mind of my Brethren of Division B, we all thought that the evidence was admissible under the *res gestae,* but inasmuch as the attorney for the plaintiff had, in effect, consented to its being excluded, by his statement at the time, that we could not consider it as evidence in the present record.

I think that, whenever the record affirmatively shows that additional evidence would probably be obtained on a new trial, we should reverse and remand the case for a new trial, and that nothing in section 4919, Code of 1906 (section 3195, Hemingway's Code), precludes us from so doing. I think the majority of the court in the present case has misinterpreted the meaning of that statute. The direction of the statute to this court on reversal to render such judgment, sentence, or decree as the court below should have rendered, ''unless it be necessary, in consequence of its decision, that some matter of fact be ascertained, or damages be assessed by a jury, or where the matter to be determined is uncertain,'' means, and can only mean, that, where it appears on the face of the record that there is no probability that any other evidence would be obtained on a new trial, the court should render judgment here and not delay the cause for a new trial on the mere speculation as to the proposition that a new trial might develop different evidence.

It appears here that a new trial would certainly develop additional competent evidence and the court below thought the evidence in the record sufficient to sustain the verdict. We merely differ from the jury and the trial judge about the sufficiency of the facts, and not because of any rule of law or mistake of law.

It clearly appears that, because of the court's mistake in excluding competent evidence, we are bound to reverse the case. There is certainly some matter of fact to be ascertained in this case. This statute should be con-

strued in connection with other statutes and with the constitutional provision guaranteeing trial by jury; and, if we extend the statute to mean that we can substitute our judgment for that of a jury after a jury has found a verdict on the facts merely because we differ from the jury about the sufficiency of the facts, we destroy the very essence of jury trial, leaving only the form for the litigant without the substance. The litigant, instead of having the judgment of his peers as to the truth and sufficiency of the facts to make out this case, is given not the judgment of twelve men, but the judgment of a majority of this court, or in the court below, the judgment of the trial judge. Not only this, but it makes the trial judge superior to the jury in a trial on the issue of facts, because the opinion expressly says, "The authority of the supreme court to grant new trial is no broader than the authority of the trial courts," which, of course, is true. The very object of getting jury trial is to have the concurring judgment of many minds taken from various walks of life, rather than a judgment of a single mind, although that mind may be specially trained. People who have acquired much book learning are prone to undervalue the intelligence and capacity of those less fortunate and less well educated in book learning. Putting the judicial ermine on men neither sanctifies the heart nor stores the mind with wisdom; they remain the same men in judgment and character that they were before, and are as prone to error, prejudice, bias, and similar faults as they always were and as other men are.

The jury is better qualified to pass upon questions of fact because it is composed of men who have experience in the general affairs of life. A man who sits in an office surrounded by books and given much to reading is liable to get away from the practical affairs of life. Sometimes much reading tends to give common sense dyspepsia, and we should be careful in this court, having the last say in most matters that come before us, not to usurp functions that do not belong to us.

Section 588, Hemingway's Code (section 800, Code of 1906), has been in the statute since 1848, at least, and provides that not more than two new trials shall be granted the same party in any case.

At the time the Constitution was adopted and the statute first adopted, the practice of giving peremptory instructions was unknown to the law. It has been a creature of gradual growth, but until recently has never been considered to warrant the court here in setting aside the verdict of a jury and deciding the issue contrary to the jury decision. Given the instruction of a majority of the court, the effect of this statute (section 4919, Code of 1906 [section 3195, Hemingway's Code]) as applies here is to deprive the party of all benefits under section 588, Hemingway's Code. The two statutes should be construed together, and both be given effect, as they may be in all cases with the proper construction placed upon them.

The majority opinion cites *Hairston* v. *Montgomery,* 102 Miss. 364, 59 So. 793; *Y. & M. V. R. Co.* v. *Pope,* 104 Miss. 339, 61 So. 450; *Hines* v. *Cole,* 123 Miss. 254, 85 So. 199, to sustain its views. Neither of the cases support the present decision. In each of them it clearly appears that there was no fact to be determined anew and no probability of any additional evidence being obtained on a new trial. In the present case it clearly appears that, if a new trial was granted, additional evidence would be produced, and that the effect of this additional evidence, if produced, would be to entirely change the judgment of the court.

We sit here primarily to render justice, and the court ought to be a little tolerant of the mistakes of counsel in the trial of a case and prefer to render justice to the litigant rather than to fence wits with counsel in the presentation and trial of a case. So far as I recall, I never consented to the rendition of a judgment here where the record affirmatively showed that on a new trial additional evidence would probably be produced. It has

been a frequent practice in this court to reverse and remand cases because additional evidence would be probably secured, as will be attested by many of the decisions in the reports.

So far as I am advised, the constitutionality of section 4919, Code of 1906 (section 3195, Hemingway's Code), has never been challenged; but, if it is to be construed as authorizing this court to substitute its judgment for that of a jury and set aside a jury's verdict here, it would, in my judgment, be unconstitutional.

Section 31 of the Constitution provides that the right of trial by jury shall remain inviolate, but authorizes the legislature, by enactment, to provide that in all civil suits tried in the circuit or chancery court, nine or more jurors may agree on the verdict and return it into court. All that part of the section after the words "trial by jury shall remain inviolate," became a part of the Constitution in 1916 (see Laws of 1916, chapter 158), having been submitted to the people in 1914 (see Laws 1914, chapter 521), and adopted by the people. Prior to that time it had been uniformly held that the trial referred to in that section was trial by jury as it existed at common law, and that the legislature could not change the trial by jury as it existed at common law so as to deprive any litigant of the rights embraced in such jury trial. Our court has uniformly held that, in interpreting constitutional provisions using general language without definition, they must be interpreted in the light of the common law and given effect as it existed at common law. In *Byrd* v. *State,* 1 How. (2 Miss.) 163, the court went into the matter of jury trial as guaranteed by the Constitution. At page 177, in the course of its opinion the court said:

"As the law stood at the time of the formation of the federal government, both the common and statute law of England required the possession of a freehold as necessary to qualify a juror, and the right of trial by jury, being of the highest importance to the citizen, and es-

sential to liberty, was not left to the uncertain fate of legislation, but was secured by the Constitution of this and all the other states as sacred and inviolable. The question naturally arises, how was it adopted by the Constitution? That instrument is silent as to the number and qualifications of jurors. We must therefore call in to our aid the common law for the purpose of ascertaining what was meant by the term jury. It is a rule that when a statute or the Constitution contains terms used in the common law, without defining particularly what is meant, then the rules of the common law must be applied in the explanation. The framers of the Constitution must have meant, therefore, to secure the right of trial by jury as it existed in England, either by the statute or common law, and the Constitution, in the absence of all subsequent legislation, would have secured to the citizen this mode of trial and all its incidents not incompatible with the republican form of our government. The Legislature cannot abolish or change substantially the panel or jury, but it may, it is presumed, prescribe the qualifications of the individuals composing it. Our statute nowhere defines the number necessary to constitute a jury; but the number 12, known as the number at common law, is no doubt what is meant by the Constitution and all the statutes, when a jury is mentioned. If we have thus derived the number and consider it secured by the Constitution, is it not also a fair inference that the incidents, such as the mode of selecting and the qualifications of the individual jurors, should also follow as necessary to the perfect enjoyment of the privilege? I think it does; and, if the position be correct, any juror not possessing the qualifications required in that country from which our constitutional privilege was taken, and to the regulations and laws of which the Constitution must be supposed to have referred, could have been successfully challenged, in the absence of a statutory regulation.''

The same holding was had in *Wolfe and George* v. *Martin,* 1 How. (2 Miss.) 30, and the rule announced has been approved by this court in *Carpenter* v. *State,* 4 How. (5 Miss.) 167, 34 Am. Dec. 116, and *Hunt* v. *State,* 61 Miss. 580. The same doctrine is held by the United States and practically all the states.

In *Ex parte Grossman,* 267 U. S. 87, 45 S. Ct. 332, 69 L. Ed. 527, 38 A. L. R. 131, the United States supreme court held that the language of the Constitution cannot be interpreted safely, except by reference to the common law and to British institutions as they were when the instrument was framed and adopted. At page 108 of 267 U. S., page 333 of 45 St. Ct., and page 530 of 69 L. Ed., Chief Justice TAFT, delivering the opinion of the court, said:

"The language of the Constitution cannot be interpreted safely, except by reference to the common law and to British institutions as they were when the instrument was framed and adopted. The statesmen and lawyers of the convention, who submitted it to the ratification of the conventions of the thirteen states, were born and brought up in the atmosphere of the common law, and thought and spoke in its vocabulary. They were familiar with other forms of government, recent and ancient, and indicated in their discussions earnest study and consideration of many of them, but, when they came to put their conclusions into the form of fundamental law in a compact draft, they expressed them in terms of the common law, confident that they could be shortly and easily understood."

In this case the court cites and quotes from other opinions in which the same view is held.

In the case of *Bram* v. *United States,* 168 U. S. 532, 18 S. Ct. 183, 42 L. Ed. 568, the court was called upon to construe the provisions of the Fifth Amendment to the Constitution of the United States upon constitutional questions, and, of course, it is very high authority as to what the common law was at the time our government was

formed. That court has, in a number of cases, construed the power as it existed at common law for the court to deal with jury verdicts, and, in construing the federal amendments to the Constitution providing for jury trial, has held that the constitutional provision was meant to preserve all of the benefits of a jury trial as it existed at common law to the litigant.

In *Slocum* v. *N. Y. Life Ins. Co.*, 228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029, it is said that the Federal courts cannot substitute their judgment for that of the jury, but, on reversing a case, a trial *de novo* must be had. In the fourth syllabus to that opinion, as it appears in the Lawyers' Edition, it was held that:

"A circuit court of appeals, when reversing a judgment of the circuit court, entered on a general verdict in favor of plaintiff, because of error in refusing to instruct the jury that the evidence was insufficient to sustain a verdict for plaintiff, cannot direct, although in accordance with the state practice, as defined in Pa. Laws 1905, chapter 198, that judgment on the evidence must be entered contrary to the verdict, but must award a new trial, in order to conform to the provisions of U. S. Const., 7th Amend.," guaranteeing trial by jury.

At page 377 of 228 U. S., page 528 of 33 S. Ct., and page 886 *et seq.* of 57 L. Ed., the court reviewed previous authorities and quoted from them, showing that the constitutional provision required a trial *de novo* whenever the judgment of the jury was reversed by the court. It said:

In *United States* v. *Wonson*, 1 Gall. 5, 20, Fed. Cas. No. 16750, a case decided in 1812, and often cited with approval by this court, it was said by Mr. Justice Story, after quoting the words of the amendment: "Beyond all question, the common law here alluded to is not the common law of any individual state (for it probably differs in all), but it is the common law of England, the grand reservoir of all our jurisprudence. . . . Now, according to the rules of the common law, the facts once

tried by a jury are never re-examined, unless a new trial is granted in the discretion of the court before which the suit is depending, for good cause shown; or unless the judgment of such court is reversed by a superior tribunal, on a writ of error, and a *venire facias de novo* is awarded. This is the invariable usage settled by the decisions of ages.'

"In *Parsons* v. *Bedford,* 3 Pet. 433, 7 L. Ed. 732, cited in 1830, the same learned justice speaking for this court, said (page 446): 'The trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy. . . . One of the strongest objections originally taken against the Constitution of the United States was the want of an express provision securing the right of trial by jury in civil cases. As soon as the Constitution was adopted, this right was secured by the Seventh Amendment of the Constitution proposed by Congress, and which received an assent of the people so general as to establish its importance as a fundamental guaranty of the rights and liberties of the people.' And then coming to the clause, and 'no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law,' he continued (pages 447, 448): 'This is a prohibition to the courts of the United States to re-examine any facts tried by a jury in any other manner. The only modes known to the common law to re-examine such facts are the granting of a new trial by the court where the issue was tried, or to which the record was properly returnable, or the award of a *venire facias de novo,* by an appellate court, for some error of law which intervened in the proceedings.'

"In *Walker* v. *New Mexico & S. P. R. Co.,* 165 U. S. 593, 596, 17 S. Ct. 421, 41 L. Ed. 837, 841, decided in 1897, where the amendment was again under consideration, it was said by this court, speaking through Mr. Justice

BREWER: 'Its aim is not to preserve here matters of form and procedure, but substance of right. This requires that questions of fact in common-law actions shall be settled by a jury, and that the court shall not assume directly or indirectly, to take from the jury or to itself such prerogative. . . . Now a general verdict embodies both the law and the facts. The jury, taking the law as given by the court, apply that law to the facts as they find them to be, and express their conclusions in the verdict. The power of the court to grant a new trial if, in its judgment, the jury have misinterpreted the instructions as to the rules of law, or misapplied them, is unquestioned, as also when it appears that there was no real evidence in support of any essential fact. These things obtained at the common law; they do not trespass upon the prerogative of the jury to determine all questions of fact.'

"In *Capital Traction Co.* v. *Hof,* 174 U. S. 1, 13, 19 S. Ct. 580, 43 L. Ed. 873, 877, decided in 1899, the subject was much considered, and, following a careful review of the prior decisions, it was said by Mr. Justice GRAY, who spoke for the court: 'It must therefore be taken as established, by virtue of the Seventh Amendment of the Constitution, that either party to an action at law (as distinguished from suits in equity or in admiralty) in a court of the United States, where the value in controversy exceeds $20, has the right to a trial by jury; that, when a trial by jury has been had in an action at law, in a court either of the United States or of a state, the facts there tried and decided cannot be re-examined in any court of the United States, otherwise than according to the rules of the common law of England; that, by the rules of that law, no other mode of re-examination is allowed than upon a new trial, either granted by the court in which the first trial was had or to which the record was returnable, or ordered by an appellate court for error in law; and therefore, that, unless a new trial has been granted in one of those two ways, facts once

tried by a jury cannot be tried anew, by a jury or otherwise, in any court of the United States.'

"These decisions make it plain, first, that the action of the circuit court of appeals in setting aside the verdict and assuming to pass upon the issues of fact, and to direct a judgment accordingly, must be tested by the rules of the common law; second, that, while under those rules that court could set aside the verdict for error of law in the proceedings in the circuit court, and order a new trial, it could not itself determine the facts; and, third, that when the verdict was set aside there arose the same right of trial by jury as in the first instance. How, then, can it be said that there was not an infraction of the Seventh Amendment? When the verdict was set aside the issues of fact were left undetermined, and, until they should be determined anew, no judgment on the merits could be given.

"The new determination, according to the rules of the common law, could be had only through a new trial, with the same right to a jury as before. Disregarding those rules, the circuit court of appeals itself determined the facts, without a new trial. Thus it assumed a power it did not possess, and cut off the plaintiff's right to have the facts settled by the verdict of a jury."

The question is also learnedly and elaborately discussed by the Pennsylvania supreme court, in *Smith* v. *Times Publishing Co.,* 178 Pa. 481, 36 A. 296, 35 L. R. A. 819, and a like conclusion was reached by the majority of the court, that only a trial *de novo* could be awarded, and that, under the Constitution of Pennsylvania as it then stood, the legislature could not pass a statute enabling the supreme court to render final judgment where it reversed the judgment of the jury because of the insufficiency of evidence. The Pennsylvania Constitution (article 1, section 6) provided:

"Trial by jury shall be as heretofore, and the right thereof remain inviolate."

The statute of Pennsylvania (Act May 20, 1891 [P. L. 101]) involved in that action reads as follows:

"The supreme court shall have power in all cases to affirm, reverse, amend or modify a judgment, order or decree appealed from, and to enter such judgment, order or decree in the case as the supreme court may deem proper and just, without returning the record for amendment or modification to the court below, and may order a verdict . . . to be set aside and a new trial had."

The authorities were ably reviewed by several members of the Pennsylvania court in that case, and the opinions are interesting and instructive as discussions of the subject.

Trial by jury is a most important right. It has done more to preserve English freedom and the present civilization existing in English and American countries than any other single principle, perhaps, in our law. Every experienced trial lawyer knows the advantage of having a decision by a judge instead of a jury where his client is a member of the educated and prosperous classes; and every experienced lawyer who has represented the less fortunate class in society appreciates the value of jury trial wherein the several individual prejudices, biases, etc., must, to have effect, be concurred in by at least eight other minds. In other words, there is less likelihood of nine men of the type designated by the statute to be jurors in this state, to-wit, qualified electors of good intelligence, sound judgment, and fair character, being warped by prejudice or influenced by class distinction than in a trial before a single man.

HOLDEN, J. (specially concurring).

I specially concur in the above dissent, upon the ground that the case is one that should be remanded for a new trial, so that justice might be administered. And while it is a case that comes within the rule that this court should render the judgment that the lower court ought to

have rendered, yet it reasonably appears that other testimony would be forthcoming upon a new hearing that the plaintiff below was unable to produce at the first trial. And for this reason an exception to the general rule could properly be made in order to bring about a new trial on the merits. The prime purpose of every court should be to proceed so that justice may be attained in each case in the end.