NASHVILLE & CHATTANOOGA R. R. Co. *v.* ANTHONY.

1. RAILROAD. *Duties and liabilities.* If an animal is in a cut or water-way near the road, or between fences on each side of the track, before an approaching train, it is the duty of the company to use all necessary care and precaution to prevent a collision; if they do not, they are liable.

2. SAME. *Same. Meaning of "road."* The word "road," in contemplation of the statute, is not merely what is called strictly road bed or track, but it is the whole road.

FROM BEDFORD.

Appeal in error from the Circuit Court of Bedford county. W. H. WILLIAMSON, J.

EAST & FOGG for Railroad.

G. N. TILLMAN for Anthony.

J. W. JUDD, Sp. J., delivered the opinion of the court.

Sufficient facts appear to show, that in the evening, between seven and eight o'clock, on the 24th of October, 1874, the horse of plaintiff below was struck and killed by the engine of plaintiff in error, about one mile from the town of Wartrace. Much conflict appears in the proof as to the condition of the railroad where it was done, and as to whether the railroad employees were in pursuance of their duty, as required by the statute, at the time of this collision.

The jury having passed upon all this, and having found against the railroad, we must assume—all other

questions aside—that their finding was a proper one, because it cannot be said that there was no evidence to support this verdict; and indeed upon a careful reading of the evidence, we are satisfied that the weight of the evidence is in favor of the verdict.

But the charge of the court below is quite earnestly but respectfully attacked, and it therefore becomes necessary to state the facts upon which that part of the charge is based which contains the supposed error.

The train was moving north at the time of the collision, and as we gather from the proof upon which the jury based their finding, the animal of Anthony was killed at the south end of a trestle about one hundred feet long. South of this trestle about two hundred and seventy-five or three hundred yards, is another trestle, and between the two, there is a cut in the road, and the road is also fenced on both sides between these two trestles, running up to and joining the south end of the first mentioned trestle.

It appears that there were two other horses killed at the same time of Anthony's, belonging to other persons. The proof is ample to show, that for over two hundred yards of this space between the two trestles, as above described, tracks of three horses were found going north in the same direction of the train, having all the appearance of being fresh made by horses running at full speed. Some of these tracks were on the road bed between the rails, but most of them were on the side of the track and in what is called the ditch or water-way.

Among other things not complained of, the court instructed the jury that, "where animals, which have not reason like men, are running along a railroad track, or so near it as to make a collision probable by a sudden deflection in their course, occasioned by their fright or by fences or other obstacles, it will be the duty of the railroad to avoid a collision, if possible. While a strict application of the rule laid down by the statute will not be required, if the animal is not actually on the road bed, yet it is the plain duty of the employees to use such precautions and care as will prevent a collision with a frightened animal running so near the road as to make it probable that it would be forced suddenly by obstructions to cross the road, when too late to prevent an accident." His Honor then proceeds to put the same instruction in other language, applying it to the facts above stated, by saying that if the animal was in a cut, or there were fences on each side of the road, and the animal was before the train, although not actually on the road-bed, but in the ditch or water-way, it would be the duty of the employees to use all necessary care and precaution to avoid a collision, and if they did not, the company was liable. In this instruction we perceive no error.

The plaintiff in error cites many decisions of this court to sustain his position, chief among which, he says, is the case of *M. & C. R. R. Co.* v. *Smith,* 9 Heis., 860. This case is relied upon to show that if the employees of the railroad are in observance of the requirements of the statutes *at the time* of the accident,

then there is no liability, but the company is excused in the law. This is certainly correct, but the court certainly did not mean to be understood as saying that this was confined to the *very time* the collision occurred.

· But anticipating this reply, the counsel ingeniously argues, that if the statutory precautions are observed *at the time the animal makes its appearance on the track*, no matter how close this is to the engine, and no matter how long before this it may have appeared in the ditch on the side of the track, the company has complied with the law and is not liable. We cannot assent to this.

In the first place, the statute does not say when any person, animal, or other obstruction appears upon the road-bed, or track, but when such shall appear *"upon the road."* The road, in contemplation of the statute, is not merely what is called strictly the road-bed or track, but it is the whole road, and it is the duty of the lookout to sweep the whole road with his vision, and we know as matter of fact it is quite easy for him to do this.

This case well illustrates the construction as here put upon the statute. The proof of both the engineer and fireman is, that they were on the lookout at the time of the collision, and that the animal killed appeared on the track about fifteen feet before the engine, running about twelve or fifteen miles per hour, and that as soon as it so appeared they immediately put themselves to work to, and did comply with the law.

But it also appears fully from the proof, that the animal had been chased by the engine for more than two hundred yards in a cut and fenced on either side, and if it be conceded that during all this time the animal was not actually on the track, but in the ditch by its side, can it be said that it would be a compliance with the statute, for the engineer to recklessly run his engine at full speed, and use no effort to avoid a collision, until the animal, through fright, leaps upon the track? We think not. This would be to leave but the shell of the statute. Nor do we think that what is here said is at all in conflict with what is said in the case cited in 9 Heis.

Let the judgment be affirmed.