LOUISVILLE & NASHVILLE R. R. CO. *v.* GARDNER.

1. **RAILROADS.** *Requirements on leaving depot.* The court charged the jury that it was the duty of the railroad company to blow the whistle at *short* intervals all the way from the depot to a crossing. *Held,* no error.

2. **SAME.** *Sections* 1166, 1167 *construed.* Code, sec. 1166 and sub-sections are all one statute, and the words, "these provisions," in sec. 1167, has reference to all the sub-sections of sec. 1166, and is not limited to sub-sec. 5 in regard to obstructions on the road.

---

FROM MONTGOMERY.

---

Appeal in error from the Circuit Court of Montgomery county.   J. E. RICE, J.

BAXTER, LURTON and QUARLES for railroad.

A. DEMOSS for Gardner.

FREEMAN, J., delivered the opinion of the court.

This action is brought to recover damages for injuries inflicted on defendant by a collision between a train of cars belonging to the defendant and a wagon in which plaintiff was riding, going home at the time, having been in the city of Clarksville during the earlier part of the day.   Plaintiff was not owner of the wagon and team, nor was he driving it, but seems to have rode into the city with a neighbor in his wagon, and was returning as stated.

The declaration avers, and the proof shows, or tends to show, the parties were driving along the public highway, at a place within the corporate limits of the

Railroad v. Gardner.

city, where there was considerable down grade in the road as it approached the railroad.    On the side next the direction the cars were approaching from the depot at Clarksville, there was an embankment, or the ground probably rose four or five feet above the level of the dirt road.    In addition, there was a picket fence that rendered it impossible either to see the train or be seen from the point of approach by the wagon.    The negligence averred is, that defendant's train approached without sounding the whistle or ringing the bell, or giving any signal of its approach, notwithstanding the danger to travellers at this particular point of the road, owing to the grade of the highway and the fence shutting out the view, and that the collision causing the injury occurred in consequence of the neglect to give the signals required by law.    Such signals are claimed to have been required continuously from the time of leaving the depot, the entire line from thence to the point of collision being within the city limits.    This line is shown to have been about six hundred yards.

The jury found for plaintiff, and assessed his damages at three thousand dollars.    We need but say, on the facts of the case, the verdict is well sustained by the proof and the rules of the court.    The only question is whether there is error of law in the record. The court charged the jury substantially, that when the plaintiff proved the collision and injury, it then devolved on defendant to show affirmatively that all the precautions prescribed by our statutes were observed to prevent the collision.    If these precautions

44

were not observed, then he held defendant liable for the damages sustained by reason of the collision. He enumerated the various precautions specified in the statute, such as blowing the whistle, ringing the bell, and when the obstruction appeared, putting down the brakes, and using all possible means to prevent injury. In this part of the charge we need but say the court followed the settled rules so often communicated by this court as to need no further discussion. In addition to this, and in this connection, he laid down the rule very properly, if not favorably to defendant, as to the proper caution to be exercised by a party approaching a railroad crossing. He then said to the jury that it was the duty of defendants to blow the whistle at short intervals all the way from the depot to the crossing, and this, it is insisted, was error. It is true the statute only uses the words "short intervals" in the directions as to approaching a town or city, and then adds, "and on leaving a city or town the bell or whistle shall be sounded when the train starts out, and at intervals till it has left the corporate limits," but we see no substantial difference in the requirements, nor was any intended. The difference between short and long intervals in the sounding of a bell or whistle in such a case, would be too nice a distinction, and one too difficult to define with any precision, to be the basis for the action of a jury, or form the matter of a rule of law. It is next insisted that the rule applied by His Honor to this does not include any cases except those in which the obstruction appears on the road, in the

language of sec. 1166, requiring a lookout, etc. We
have carefully examined the various provisions of these
sections of the code, and find ourselves unable to as-
sent to this proposition. The sections must be held
to be a series of requirements all tending to the same
end, and as they stand in our Code, making but one
statute. They each look to the safety of persons and
animals, and the security of passengers in the cars.
It was intended to enforce the strict performance of
these duties by fixing arbitrarily upon the company a
liability in case of their neglect. The provisions all
precede sec. 1167, and are succeeded by the pro-
visions of sec. 1167, that any railroad company that
fails to observe these precautions, or cause them to
be observed by its agents and servants, shall be re-
sponsible for all damages to persons or property oc-
casioned by or resulting from any accident or colli-
sion that may occur. We can see nothing in the
language of this section to limit its operation alone to
the section immediately preceding it. If such had
been the legislative intent, it would have been easy
to have said so. We must give the language its
natural signification, and this inevitably makes it in-
clude all the previous precautions in the statute men-
tioned, none being excluded.

It is again argued that the judge erred in a por-
tion of the charge which gives the effect of contrib-
utory negligence in mitigation of damages, first in say-
ing, substantially, that if the proof failed to show the
use of the precautions required, and the plaintiff failed
to use the precautions that a prudent man would use

to preserve his life or limb, but rushed heedlessly upon the track or road, he could recover, but the conduct of the plaintiff might be looked to in mitigation of damages.

Two objections are made to this—first, the use of the words, "rushed heedlessly upon the road," is said to have put a case that is too strong, and exclude a less degree of negligence as ground for mitigation. While the case put would certainly be a case of gross contributory negligence, and the rule is properly stated, that this would be ground for mitigation such as should be operative as a real reduction of the damages to be found, still it is not said that a less degree of negligence would not also, in a less degree, operate as like mitigation. Nor do we think the jury was misled by this charge, or could possibly have taken the view of it urged by counsel. The after sentences of the charge on this subject explain His Honor's meaning when he tells them the rule is that if plaintiff, by negligence, contributed to bring about the accident by which he received an injury, he ought to bear some of the consequences of the accident his carelessness or negligence contributed in bringing about. No further instructions being asked, we see no error that could possibly affect the defendant in the above proposition with its connection in the charge. It is, however, objected that His Honor said in one part of this charge to the jury, you may look to conduct of plaintiff, etc., and that this is error. If this stood alone, as we have held at this time, it would be error, but in the concluding sentences of his charge on

this subject, when the rule is clearly stated for the guidance of the jury, he tells them the defendant "ought" to bear his share of that to which he has contributed. This is an imperative word, probably as strong in this connection as any that could be used when addressed to a jury who are to give to each party to the case the measure of rights which he ought to have, and no more; and this under the solemn sanction of their oaths.

Upon the whole case we see no reversible error, and affirm the judgment.