11L 205
15L 150

THE LOUISVILLE, NASHVILLE & GREAT SOUTHERN·
RAILROAD COMPANY v. JAMES M. REIDMOND.

1. SUPREME COURT PRACTICE. *Motion to quash.* The Supreme Court
will not notice a motion to quash a warrant which fails to state any
ground for the motion.

2. PLEADINGS AND PRACTICE. *Misnomer.* A corporation may be known,
by several names, and can only take advantage of a misnomer by a
plea in abatement, and no defense on this ground is admissible after
a step in the cause recognizing the identity of the corporation sued
with the corporation defending.

3. RAILROADS. *Obstruction.* To constitute an obstruction within the ·
meaning of the statute prescribing the duties of a railroad company
when a person, animal or other obstruction appears upon the road,
the animal must be in a position to be struck or directly injured by
the train while moving on the rails.

4. SAME. *Same. When statute does not apply.* The statute does not apply
when the animal appears on some other part of the company's right
of way, and the duty of the company in such a case is regulated by·
the principles of the common law.

5. SAME. *Same. Same.* Where an animal was on the company's right
of way, six or eight feet from the end of the cross ties of the track,
with its head turned from the road, and an unobstructed egress in that
direction, it was error to charge the jury that it was the duty of the
lookout to watch over the entire right of way, and whenever animals
on any part of it are seen, to sound the whistle to frighten them away.

FROM TIPTON.

Appeal in error from the Circuit Court of Tipton
county. T. J. FLIPPIN, J.

H. B. FOLK for Railroad.

SIMONTON, YOUNG & BLACKWELL for Reidmond.

COOPER, J., delivered the opinion of the court.

Action by Reidmond against the railroad company for value of a horse killed by the company's train. The verdict and judgment were in favor of Reidmond, and the company appealed in error.

The learned counsel of the plaintiff in error first insists that the circuit court should have sustained his motion to quash the writ. The record does show that such a motion was made and overruled. But it also shows that no cause was assigned or reason given for the motion. This court has repeatedly held that such a motion cannot be entertained, for the obvious reason that if the defect relied on were pointed out it might be remedied by amendment.

It appears from the argument submitted that the motion, as well as a subsequent motion in arrest of judgment, was based on the ground that the company was sued by a wrong name, its proper corporate name being the Louisville & Nashville Railroad Company. The record shows that the suit was commenced before a justice of the peace, the justice rendering a judgment against the company. The Louisville & Nashville Railroad Company probably appeared as the defendant and made defense, and at any rate that company certainly appealed from the judgment, the appeal bond reciting the judgment as being against the Louisville, Nashville & Great Southern Railroad Company. This was a recognition of the identity of the two companies. A corporation may, like an individual, be known by several names, and can only

take advantage of a misnomer by plea in abatement: *East Tennessee & Georgia Railroad Company* v. *Evans,* 6 Heis., 607. The agreed statement of fact shows that the legal name of the defendant below is the Louisville & Nashville Railroad Company, but that it is also called the Louisville, Nashville & Great Southern Railroad Company, this last name being painted by the defendant on its passenger coaches, and printed on its bill heads. It is further agreed that the company advertises itself and is commonly known by the last name. Under these circumstances the objection now taken is not only untenable, but frivolous. It would have been much more to the purpose to have raised objection to the misnomer of the plaintiff below, his name appearing in the record in four different forms, and having two or three variations in the briefs of counsel.

The case was tried upon an agreed statement of facts. The train had just started from a depot, and struck the animal sued for before it had gotten under full headway. The engineer and fireman were both on the lookout and saw the animal at least five hundred yards before it was struck. The animal was standing outside of the track, six or eight feet from the end of the cross ties, on the left of the advancing train, with its head from the track. In its front were open woods, with no ditch or waterway to prevent egress in that direction, while the track behind was on a slight embankment. At the distance of four or five hundred yards from the animal, the alarm whistle was sounded, and continued to be sounded to

within forty or fifty feet of the place where it stood. The brakes were also applied, and the speed of the train checked to about eight miles an hour, but the train was not stopped, nor an effort made to stop it, nor was the engine reversed. By reversing the engine, the train could have been stopped within the distance of fifty feet, without injury to the train or danger to the passengers, but not at a less distance at its then rate of speed. The animal continued standing where it was first seen until the engine was about twenty-five feet from it. At that moment it was hidden from the engineer by the smoke stack, and the fireman turned away, and commenced firing the engine. The agreed statement of facts concluded thus: "That the animal could not have been struck by the engine if it had continued standing where it was first seen, to wit: within six or eight feet of the end of the cross ties, but that it became frightened at the approach of the train, and attempted to dart across the track, and was struck, and knocked off on the right hand side of the road." The animal was blind of one eye, but the engineer and fireman were not aware of the fact. The train was under control of the engineer at the time of the accident.

The trial judge, in his charge to the jury, after giving the substance of the statute regulating the duties of the railroad company, its agents and servants, "when any person, animal or other obstruction appears upon the road" said: "The meaning of the statute is that when persons or animals appear on the track of the road as obstructions, so that if they do not move

Railroad *v.* Reidmond.

or get off the road bed they will be struck by the engine, then these provisions of the statute have to be complied with." And his Honor expressly repudiated the position assumed by the counsel of the plaintiff below, "that if the animal was on the right of way of the company, although not on the road bed or track, it would be an obstruction within the meaning of the statute." But, he adds, "it is the duty of the lookout to watch over the entire right of way, or on both sides of the track that is open and covered by the right of way, and whenever animals are discovered thereon to sound the alarm whistle to frighten them away, so that they may not become obstructions on the track, and it may or may not be necessary to stop the train at all to prevent an accident. The degree of caution and diligence to be exercised in cases of the sort must necessarily depend upon the particular facts of each case. The highest diligence is required, and for slight neglect the company is made responsible." His Honor then mentions some of the facts which might be looked to in determining the degree of diligence used.

His Honor refused to give the following charge as requested by the railroad company : " If you find from proof that the plaintiff's mare, when first seen by the engineer and fireman, was standing six or eight feet from the end of the cross ties, with her rear towards the ties, and that if she had remained there, she could not have been struck by defendant's train; that the alarm whistle was sounded, brakes applied, and speed of train retarded at the distance of four or

five hundred yards, and until within forty or fifty feet of the mare, and that she continued standing as first seen until within twenty-five feet of the train, and cut off from the vision of the engineer by the front of the engine, and that there was no ditch, waterway, cut or fence in front of the mare to prevent her escape on the side of the railroad on which she was standing, then I charge you that there was no obstruction appearing on the road in the sense of the statute, and the defendant was not required to reverse the engine, and stop the train, or do more than was done."

His Honor was undoubtedly right in holding that an obstruction upon the road within the meaning of the statute was something in a position to be struck or directly injured by the engine or train while moving on the rails, and that an animal not thus situated but merely on some part of the company's right of way would not be such an obstruction : *Holder* v. *Cincinnati, St. Louis & New Orleans Railroad Company*, 11 Lea, 176. If the language of the learned judge, who delivers the opinion of the court in the case of the *Nashville & Chattanaooga Railroad Company* v. *Anthony*, 1 Lea, 516, was intended to give a broader meaning to the word "road" as used in the statute, it was inadvertent, and not required by the facts or essential to the point actually decided. On the contrary, the court expressly approved the charge of the trial judge in that case that "strict application of the rule laid down by the statute would not be required if the animal was not on the bed." The requirements of the statute

must always be complied with in such a case, if possible. This court has uniformly so ruled. The statute does not apply when an animal appears merely on some other part of the right of way. In such a case, it is the duty of the employees of the company to use such precautions and care as will pevent a collision with a frightened animal running so near the road as to make it probable that it would be forced by obstructions to cross the road when too late to prevent an accident. In other words, the duty of the company is not regulated in such cases by the statute, but by the principles of the common law. His Honor erred, therefore, in saying that it was the duty of the lookout to watch over the entire right of way, and whenever animals are discovered on any part of it, to sound the alarm whistle to frighten them away. The sounding of the whistle is a requirement of the statute in the case of obstructions upon the road proper. It is not an imperative duty in any case unless prescribed by statute, although the failure to resort to it might be negligence which would render the company liable in particular cases. The company is undoubtedly bound in contingencies not within the statute to the necessary degree of diligence to prevent an accident, both in the outlook, and in the resort to proper precautions. Whether the blowing of the whistle would be a precautionary act of diligence in a particular case would be for the jury to determine upon a proper charge.

His Honor erred also in making his charge too general, and not directing it more pointedly to the facts

Railroad *v.* Reidmond.

agreed on.   The defendant was entitled to a charge upon these facts, although not necessarily in form of the request made.   The turning point of the case was whether the company was guilty of negligence. It is of course not required of a railroad company that it shall stop its train, or even slow up every time an animal is seen on any part of the right of way.   It would be impossible to keep to the schedule time of the trains, which is so essential to the convenience of the public and the safety of the traveling community, with such a requirement.   It may be, under these circumstances, inasmuch as the agreed facts show that the whistle was sounded and the brakes put down in this case, that the jury may find that there was no failure on the part of the company to use all proper precautions up to the time when the train was within twenty-five feet of the plaintiff's mare.   The attention of the jury should therefore, in the event they should so find, be directed to the point whether there was any negligence on the part of the company in the omission of precautionary measures after that point of time, or whether anything could have been done after the dart of the animal on to the track.

Reverse and remand.