**MAJESTIC v. LOUISVILLE & N. R. CO.**

**No. 9771.**

Circuit Court of Appeals, Sixth Circuit.

Feb. 16, 1945.

Walter P. Armstrong, of Memphis, Tenn., for appellant.

Henry J. Livingston, of Memphis, Tenn. (Clarence E. Clifton, of Memphis, Tenn., on the brief), for appellee.

Before ALLEN, HAMILTON, and Mc-ALLISTER, Circuit Judges.

HAMILTON, Circuit Judge.

On April 3, 1943, appellant, while driving a Chevrolet pick-up truck on Holmes Street in Memphis, Tennessee, at a grade railroad crossing of appellee, was struck by a locomotive and seriously injured. From a judgment in favor of appellee, appellant appeals.

The points urged are alleged errors in the charge and alleged erroneous admission of one item of evidence. Appellant grounded his suit on common law negligence, violation of the statutes of Tennessee and ordinances of the city of Memphis.

So far as material to the issues, the facts show that appellant was employed by the United States Government as an inspector on the construction of an Army Air Depot project in the city of Memphis, Tennessee. The project was adjacent to the right-of-way of appellant, its principal ingress and

egress being Holmes Street, a public thoroughfare in the city of Memphis.

Appellee's railroad tracks cross Holmes Street near the entrance to the Government's Air Depot and the crossing carried heavy vehicular traffic at the time of the accident. The crossing was without gate or flagman protection, but had a flashing signal light without a bell, which some of the evidence indicates was not then working.

About 8:30 o'clock a.m., on April 3, 1943, appellant in the course of his employment was driving a pick-up truck on Holmes Street about 150 to 175 feet from the crossing. Another inspector was riding with him. The evidence as to the accident is conflicting, some of it showing that as appellant approached the crossing with his back partly towards the trains approaching from the west, he stopped, looked and listened and saw no flashing light, heard no warning sound and saw no train. Also that the view of trains from the west was so obscured by physical structures and freight cars on the railroad side tracks that a train could not be seen until the front of the truck had gotten to a point approaching the tracks where a locomotive, if on the crossing, would strike it.

As appellant started the truck forward, after stopping for observation, and when he got onto the crossing, he saw a locomotive coming from the west at high speed and in his resultant excitement he stalled the motor and, while in the act of getting out of the car on the side from which the train was coming, he was struck.

The engineer in charge of the train testified it was traveling at a speed of approximately 18 miles an hour and that he was looking out ahead and saw appellant approaching the crossing on Holmes Street about 100 feet from it and that the engine at that time was about 175 feet from the crossing. He stated that the automobile moved toward the crossing without changing speed and did not slow down until it got across the first rail, where it stopped and rolled back about two feet and stopped again. The engine was then about 75 feet from the automobile. He stated that he did not then apply his emergency brakes because appellant had a chance to get away and that he could have gotten away as he had sufficient time. He stated that when the train got about 50 feet from appellant's automobile, he saw it was not going to move on so he applied his emergency brakes and blew the alarm whistle. The

engineer also stated he commenced sounding the usual crossing signal, two longs, a short and a long whistle, about 300 feet from the crossing and that after the automobile was struck the train moved about 160 feet before stopping.

The Railroad Precautions Act of the State of Tennessee provides for the sounding of a whistle or bell at every public designated crossing; that an engineer, fireman or some other person shall be on the locomotive and always on the lookout ahead and when any person, animal or obstruction appears upon the track, the alarm whistle shall be sounded, the brakes put down and every possible means used to stop the train and prevent an accident. Tennessee Code 1932, Sections 2628, 2629, 2630.

The Tennessee Supreme Court has construed the statute to mean that every Railroad Company failing to observe its requirements shall be responsible for all damages to persons or property occasioned by or resulting from any accident or collision that may occur, unless the railroad shows that the precautions are observed. Louisville & N. R. v. Gardner, 69 Tenn. 690, 1 Lea. 690. This construction must be followed even if hardship results or absurdity ensues because the language of the statute is explicit and certain and can be given no other meaning and contributory negligence of the person injured does not excuse a strict compliance with the statute. However, the onus of the statute is lifted when the railroad shows it had done all that it was required to do thereunder, and that the accident was unavoidable. But, when impossibility and unavoidableness arise out of the default of the railroad, liability still exists.

The statute does not brook speculation or conjecture, even of the slightest, of the agents in charge of a train as to the probability or possibility of the effect of neglecting to observe any of the precautions contained therein. It demands an absolute obedience to its provisions whether they seem necessary or not. Chattanooga Rapid Transit Company v. Walton, 105 Tenn. 415, 21 Pick. 415, 58 S.W. 737.

The duties of those in charge of a train to observe the requirements of the statute are not confined to the very time the accident occurs. They commence when the obstruction "appears" upon the road and "the road", in contemplation of the statute, is not merely what is called strict-

ly the roadbed or track, but also includes the public approaches thereto and it is the duty of the lookout to view the whole road within the orbit of his vision. Nashville & Chattanooga R. Co. v. Anthony, 69 Tenn. 516, 520, 1 Lea. 516, 520.

The trial court read the statutes to the jury and stated generally the duties of train operatives under them in the light of the decisions of the Supreme Court of Tennessee, but did not define the statutory meaning of the word "obstruction."

At the conclusion of the general charge, the Judge stated that the parties had requested the court to instruct the jury specifically on certain phases of the law and that the instructions so given would be considered by the jury as additional law of the case. Among these special charges, the court gave the following at the request of appellee:

"If an automobile appears on the railroad track and is in motion so that the engineer reasonably presumes that the automobile will clear the track before the engine collides with it, then such automobile cannot be regarded as an obstruction so as to require the engineer to sound the alarm whistle, put down his brakes and use every other means to prevent a collision."

"In this case if you find that the plaintiff drove his automobile to a point near the railroad track and there stopped the same or so reduced the speed of the automobile as to show no intention of proceeding on to the track in front of the train then the defendant's employee upon the train who saw the plaintiff in this position would be entitled to assume that the plaintiff would not proceed to cross in front of the train and such operative would not be required to take any steps to stop the train or slacken its speed until the actions of the plaintiff indicated that he was about to proceed across the track."

■■ Appellant complains of these instructions and we think the complaint is well grounded. Under the Tennessee decisions the word "obstruction" as used in the statute means that which may obstruct or hinder the free and safe passage of a train or that which may receive an injury or damage if run over by the train, as in the case of a person on the road or near enough to the railroad to be within striking distance of a train. One does not pass beyond striking distance so as to absolve the railroad company from complying with the statutes so long as he is sufficiently close to the road that having due regard for the instinct of self-preservation and the involuntary movements of the body there is still a reasonable probability or likelihood that he might fall or be thrown against the side or in front of the engine or train as it passes him, or be struck if traveling in a vehicle. Nashville & C. R. Co. v. Carroll, 53 Tenn. 347, 6 Heick. 347, 368; Louisville N. & G. S. R. Co. v. Reidmond, 79 Tenn. 205, 11 Lea. 205.

The evidence in the case conflicts in some particulars only. The proof for appellant shows that he stopped the automobile about 20 feet from the crossing, looked and listened, saw and heard no train, and then started toward the tracks, and that because of obstructions he was unable to see the train until he got on the track, and then he stalled his motor and was in the act of getting out of the car when the train hit him.

The proof for appellee shows that the view of an approaching train to the crossing by a traveler on the street was unobstructed and the proof further shows that appellant drove his car from inside the premises of the Ordnance Depot onto the street and proceeded to the railroad without stopping and when the car appeared on the railroad, it stopped, rolled back about 2 feet, started and stopped again. Thus, it appears clearly from the whole evidence that the car stopped on the railroad track when the engine was about 75 feet away. The engineer testified that he did not then put down his brakes.

■ For the court to measure judicially the weight of circumstances which the jury can equally well estimate by experience and observation is an invasion of the province of the jury. As to whether the movement of the automobile on the road was an obstruction as that word is defined by the Tennessee courts was for the jury. The commandments of the present statutes require obedience when the obstruction appears upon the road and, unless it is made to appear from the evidence, with all inferences the jury could justifiably draw from it, that the lookout, after observing the obstruction, did all the things enumerated in the statutes, or such of them as he had time to do in the exercise of reasonable judgment to avoid injury, with due regard to the safety of his train, the issue is one of fact for the jury.

The evidence does not support an instruction based upon the theory that an automobile moving in the usual manner over a grade crossing is not an obstruction under the Tennessee precautionary statute and we do not decide that question. Neither does the evidence support an instruction based upon the theory that appellant stopped his automobile near the railroad track without showing any intention of proceeding onto the track in front of the oncoming locomotive.

■ The testimony of appellant and his witnesses that he stopped 20 feet from the track and then proceeded forward does not support the instruction that the engineer could have anticipated that he intended to remain there until the train passed; nor does the statement of a witness made previous to the trial and introduced in evidence solely for the purpose of contradiction, that the automobile stopped close to the track, support such a charge.

■ The issue as to whether those in charge of appellee's train exercised the highest practicable degree of skill in using the appliances on the train enumerated in the Precautions Act to avoid injury to appellant after the car in which he was riding appeared on the track as an obstruction, if it was an obstruction, was a question for the jury.

The trial court, at the request of appellee, instructed the jury that it was the duty of appellant on approaching the railroad track before driving on it, to use his eyes and ears to look and listen for an approaching train and to so continue until he reached the crossing. There was evidence for appellant that his view of the oncoming train was obscured and that the flashing signal at the crossing was not working and that he heard no warning signal except the emergency one.

■ In view of evidence of these conditions' not created by or under the control of appellant, which could prevent him from seeing or hearing an approaching train, the court should have modified the instruction so as to present to the jury the question of whether he was relieved of the positive duty to look or listen because of the alleged obstructions to sight or hearing. Hurt v. Yazoo & M. V. R. Co., 140 Tenn. 623, 205 S.W. 437; Stem v. Nashville Interurban Railway, 142 Tenn. 494, 221 S.W. 192; Choate v. Sewell, 142 Tenn. 487, 221 S.W. 190; Louisville & Nashville Railroad Company v. Satterwhite, 112 Tenn. 185, 79 S.W. 106; Iron Mountain R. Co. v. Dies, 98 Tenn. 655, 41 S.W. 860; Tennessee Cent. R. Co. v. Gilbert, 131 Tenn. 201, 174 S.W. 812; Southern Railway Company v. Penley, 175 Tenn. 380, 134 S.W.2d 177.

The Federal Employees' Compensation Act, U.S.C.A. Title 5, § 777, provides in substance that if an injury for which compensation is allowable is caused under circumstances creating a legal liability against a third person for damages and a beneficiary entitled to compensation from the United States for such injury as the result of a suit brought by him or the result of a settlement, receives any money or other property from a third person in satisfaction of such liability, the beneficiary shall, after deducting the cost of suit and reasonable attorney's fee, apply the money received from the third person by refunding to the United States the amount of compensation it has paid and credit any surplus upon future payments of compensation, and if no compensation has been paid to the injured person he shall credit the money so received upon any compensation payable to him by the United States on account of the same injury.

■ A witness for appellant, and an employee of the United States, was asked on cross examination whether or not appellant was receiving compensation from the United States for his injuries. The witness replied he did not know. He was then asked his belief about the matter and answered that he supposed appellant was receiving such compensation. This evidence was objected to on the ground it was hearsay and irrelevant and the court overruled the objection. It is objectionable as being hearsay. Subsequently, other evidence was introduced by cross examination of appellant's witnesses showing appellant was a beneficiary under the Federal Employees' Compensation Act. Appellant urges on us that the introduction of evidence of the receipt of compensation by him was error and has no place in the case.

■ The rule excluding evidence that an injured plaintiff has been compensated for his injury under an accident insurance policy or workmen's compensation prevails under the laws of Tennessee. Illinois Central Railroad Co. v. Porter, 117 Tenn. 13, 94 S.W. 666, 10 Ann.Cas. 789. The same rule also prevails in the courts of United States. Clune v. Ristine, 8 Cir., 94 F. 745;

Brabham v. Baltimore & Ohio Railroad Co., 4 Cir., 220 F. 35, L.R.A.1915E, 1201; Sprinkle v. Davis, 4 Cir., 111 F.2d 925, 128 A.L.R. 1101.

The justice of the rule is that damages wrought by a wrongdoer are measured by the whole loss. The party injured is entitled to recover for all the loss inflicted and the wrongdoer may not take advantage of the contracts or other relation that may exist between injured persons and third persons. The ethics of the rule are that the wrongdoer should not have the benefit of a fund or contract directly or indirectly or by circumvention, to which he in no wise has contributed.

■■■ The controlling rule here is collaterally akin to the rule of inadmissibility of evidence of compensation from a third party but the kinship is not close enough to place it in the same immediate family. Extrinsic testimony, or that elicited by cross examination to show the bias or interest of a witness in a cause, covers a wide range and the field of external circumstances from which probable bias or interest may be inferred is infinite. Wigmore on Evidence, 3d Ed., §§ 948–949. The rule encompasses all facts and circumstances which, when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish one side of a cause only.

■■■ While the rule excluding any testimony or statement to the effect that a plaintiff in a personal injury action is insured against loss on account of the injury should be strictly adhered to and rigidly enforced, still, in applying it, the court must give weight to the equally important rule of the undoubted right of a party to cross examine witnesses to show their interest or bias.

■■■ Accordingly, facts tending to show interest, bias or motive on the part of a witness may be elicited on cross examination although such examination may necessarily disclose that the injured person or the defendant is protected by insurance. Facts wholly immaterial or prejudicial to one of the parties on the main issue of a case may be material as affecting the credibility of a witness. Under this rule the fact that a witness is employed by a party to the suit is regarded as a relevant circumstance to be considered by the jury as showing bias or interest, and a fortiori where the witness is an employee of a party who has an interest in the recovery, his employment may be shown for the same reason.

■■■ We are of the opinion that the questions propounded to appellant's witnesses as to their employment by the United States and as to a showing that appellant was a beneficiary under the Federal Employees' Compensation Act, were competent as such evidence might have a tendency to show bias or interest.

■■■ The trial court should charge the jury that the evidence is admitted only as affecting the credibility of the witness if it does so affect his credibility and that if the jury should conclude that appellant is entitled to a verdict, no consideration whatever should be given to such evidence in fixing the amount of damages. Wabash Screen Door Company v. Black, 6 Cir., 126 F. 721; Eppinger & R. Co. v. Sheely, 5 Cir., 24 F.2d 153; Sprinkle v. Davis, supra.

■■■ In jury trials erroneous rulings embodied in instructions are presumptively injurious and furnish grounds for reversal unless it affirmatively appears they were harmless. Fillippon v. Albion Vein Slate Company, 250 U.S. 76, 82, 39 S.Ct. 435, 63 L.Ed. 853. From an examination of the entire record, we are of the opinion that the instructions complained of by appellant were harmful and calculated to mislead the jury. Cause reversed and remanded to the District Court for a new trial and for further and other proceedings in conformity with this opinion.