ILLINOIS CENTRAL R. R. Co., et al. *v.* PERKINS, ADMR.

No. 39487 April 18, 1955 79 So. 2d 459

894

*Ely B. Mitchell,* Corinth, for appellants.

896

*Orma R. Smith,* Corinth, for appellee.

902

Holmes, J.

This suit was brought in the Circuit Court of Alcorn County by Jamie D. Perkins, administrator of the estate of W. C. Swinea, deceased, against the Gulf, Mobile and Ohio Railroad Company, the Illinois Central Railroad Company, and Sam King, the engineer operating the engine of the Illinois Central Railroad Company on the occasion here involved. The suit sought to recover damages for the alleged wrongful death of the said W. C. Swinea, deceased, resulting from a collision between a Dodge pickup truck in which the deceased was riding and a through freight train operated by the Illinois Central Railroad Company.

The collision occurred on April 5, 1952, about 10:30 o'clock in the morning, in the Town of Selmer, Tennessee, at a crossing where the tracks of the Gulf, Mobile and Ohio Railroad Company cross at right angles Highways 45 and 65. The highway forms the main street of the town. The railroad tracks going over the crossing consist of three. The tracks run in a north and south direction and the highway runs in an east and west direction, and on the occasion of the collision, the deceased was approaching the crossing from the west in his truck. Approaching from the west, one first crosses a track designated in the record as Track No. 3, and proceeding east, then crosses a second track, designated in the record as track No. 2, and continuing east, then crosses a third track, or the main line track, designated in the record as track No. 1. The distance from the center of track No. 1 to track No. 2 is 16 feet. The center

of track No. 3 is 53 feet from the center of track No. 2. The total distance from the center of the main line track, or track No. 1, to the center of track No. 3 is 69 feet. The rails are 4 feet 8 inches apart. Tracks Nos. 2 and 3 are house tracks, or passing tracks. As the result of a collision at this crossing, the deceased, W. C. Swinea, was killed and his truck was practically demolished. The impact of the collision between the truck and the train was so great that the motor was knocked out of the truck and hurled through the air, and the deceased was likewise knocked from his truck and instantly killed.

The declaration predicated liability upon the alleged violation of common law duties by the defendants, and also the alleged violation of statutory duties by the defendants, Illinois Central Railroad Company and Sam King, its engineer. As violations of common law duties, it was alleged that the Gulf, Mobile and Ohio Railroad Company permitted the crossing to become a dangerous crossing in that it permitted cars to be parked along the side tracks obstructing the view of those in vehicular traffic, and in addition thereto, the signal lights were inadequate to properly notify vehicular traffic of trains approaching the crossing. By arrangement between the Gulf, Mobile and Ohio Railroad Company and the Illinois Central Railroad Company, the latter was granted trackage rights, pursuant to which it operated its through freight trains over the main track which traversed the crossing in question. The declaration charged that the Illinois Central Railroad Company and its engineer knew, or should have known, that the crossing was a dangerous crossing due to the fact that railroad cars were parked along the side tracks so as to obstruct the view of approaching trains on the main line track, and due to the fact that signal lights were inadequate to properly notify vehicular traffic, and notwithstanding this knowledge, the Illinois Central Railroad Company and its engineer, Sam King, ran its train over and across said crossing at a highly reckless and dangerous rate of speed. The

declaration further charged the violation by the said Illinois Central Railroad Company and its engineer, Sam King, of statutory duties under certain precautionary statutes of the State of Tennessee.

The suit was brought in the name of the administrator of the deceased for the use and benefit of six adult children who survived the deceased, and sought damages for the death of the deceased and for the destruction of the deceased's pickup truck, and for his funeral expenses. His funeral expenses, according to the undisputed evidence, amounted to $467.75. The value of the truck, according to the undisputed evidence, was between $350 and $400. After the wreck, the administrator sold the salvage from the truck for $15.00.

Upon the trial of the case and at the close of the evidence for the plaintiff, the defendants made a motion to exclude the evidence and direct a verdict for the defendants. This motion was overruled and the defendants then introduced evidence in their own behalf. Upon the conclusion of all of the evidence, the appellant, over the objection of the defendants, was permitted to amend his declaration so as to delete therefrom a demand for damages for the loss of society and companionship, and to insert therein a demand for damages for the pecuniary value of the life of the deceased. At the close of all of the evidence, the case was submitted to the jury solely on the question as to whether or not the defendants, Illinois Central Railrod Company and Sam King, had complied with the precautionary statutes of Tennessee with reference to the sounding of the whistle and bell by trains coming into a town or city and with reference to whether or not the said defendants had maintained a proper lookout in approaching the crossing as required by the statutes of Tennessee. No issue was submitted to the jury which authorized the jury to return a verdict against the Gulf, Mobile and Ohio Railroad Company. The only defendants as against whom the jury was authorized under the evidence and the instructions of the

court to return a verdict were the defendants, Illinois Central Railroad Company and Sam King. The verdict returned by the jury was as follows: "We the jury find for the plaintiff and assess his damages at $2,000." On this verdict the court entered a judgment against the Illinois Central Railroad Company and Sam King. No judgment was entered against Gulf, Mobile and Ohio Railroad Company, and there is no appeal by the Gulf, Mobile and Ohio Railroad Company. From the judgment entered, the defendants, Illinois Central Railroad Company and Sam King, prosecute this appeal.

██ █ The deceased was, at the time of his death, 74 years old and in good health. He had a life expectancy of 7.23 years. He left surviving him six adult children. He was engaged in farming and had an income from his farm of $2,000 per year. The elements of damages which the jury was authorized to take into consideration in the event it found for the plaintiff were the pecuniary value of deceased's life, his funeral expenses, and property loss. The jury was expressly instructed that it could not consider as an element of damages the loss of society and companionship which the children of the deceased suffered by reason of his death. The elements of damages so authorized under the court's instructions were proper. Bennett v. U. S., 94 F. Supp. 6; Dixie Greyhound Lines v. Woodall, 188 F. 2d 535.

██ █ The collision here involved, having occurred in Tennessee, this suit is controlled by the statutes of Tennessee, and the construction of these statutes as placed upon them by the courts of Tennessee. Turner v. Southern Ry. Co., 112 Miss. 359, 73 So. 62.

This bring into review the following statutes as set forth in Williams' Tennessee Code, Anno., (1934).

Section 2628, Subsection (3): "On approaching a city or town, the bell or whistle shall be sounded when the train is at the distance of one mile, and at short intervals till it reaches its depot or station; and on leaving a town or city, the bell or whistle shall be sounded when

the train starts, and at intervals till it has left the corporate limits.''

Section 2628, Subsection (4): ''Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or· other obstruction appears upon the road, the alarm whistle **shall be** sounded, the brakes put down, and every possible means employed to stop the train and prevent an **accident.**''

Section 2629: ''Every railroad company that fails to observe the above precautions, or cause them to be observed by its agents and servants, shall be responsible for all damages to person or property occasioned by, or resulting from, any accident or collision that may occur.''

Section 2630: ''No railroad company that observes, or causes to be observed, these precautions shall be responsible for any damage done to person or property on its road. The burden of proof that it has observed said precautions shall be upon the company.''

Subsection (3) of said Section 2628 providing that on approaching a city or town the bell or whistle shall be sounded when the train is at the distance of one mile, and at short intervals until it reaches the depot or station, has been construed by the Tennessee courts to mean a distance of one mile from the corporate limits **of the** town and not a distance of one mile from the depot or station. Illinois Central Railroad Company v. Davis, 104 Tenn. 442, 58 S. W. 296; Webb v. Railroad Company, 88 Tenn. 124, 12 S. W. 28.

 The construction placed upon the foregoing precautionary statutes of Tennessee by the Supreme Court of Tennessee is reviewed in the case of Majestic v. Louisville & N. R. Co., (C. C. A. 6th), 147 F. 2d 621, as follows:

''The Tennessee Supreme Court has construed the statute to mean that every railroad company failing to observe its requirements shall be responsible for all damages to persons or property occasioned by or result-

ing from any accident or collision that may occur, unless the railroad shows that the precautions are observed. Louisville & N. R. v. Gardner, 69 Tenn. 690, 1 Lea. 690. This construction must be followed even if hardship results or absurdity ensues because the language of the statute is explicit and certain and can be given no other meaning and contributory negligence of the person injured does not excuse a strict compliance with the statute. However, the onus of the statute is lifted when the railroad shows it had done all that it was required to do thereunder, and that the accident was unavoidable. But, when impossibility and unavoidableness arise out of the default of the railroad, liability still exists.

"The statute does not brook speculation or conjecture, even of the slightest, of the agents in charge of a train as to the probability or possibility of the effect of neglecting to observe any of the precautions contained therein. It demands an absolute obedience to its provisions whether they seem necessary or not. Chattanooga Rapid Transit Company v. Walton, 105 Tenn. 415, 21 Pick. 415, 58 S. W. 737.

"The duties of those in charge of a train to observe the requirements of the statute are not confined to the very time the accident occurs. They commence when the obstruction 'appears' upon the road and 'the road' in contemplation of the statute, is not merely what is called strictly the roadbed or track, but also includes the public approaches thereto and it is the duty of the lookout to view the whole road within the orbit of his vision. Nashville & Chattanooga R. Co. v. Anthony, 69 Tenn. 516, 520, 1 Lea. 516, 520."

The appellee bases his right of recovery upon a claimed violation of the foregoing precautionary statutes of Tennessee. On the other hand, the appellants contend, first, that they were guilty of no violation of any of the precautionary statutes of Tennessee, and, second, that the evidence shows that the truck ran into the train on the occasion in question, and that, therefore, appellants are

free from liability under the authority of Southern Ry. Co. v. Simpson, (Supreme Court of Tennessee) 261 S. W. 677, and McCampbell v. Central of Georgia Ry. Co. (Supreme Court of Tennessee), 253 S. W. 2d 763, holding that a railroad company is free from liability where a motorist runs into the train while the train is occupying the crossing.

The vital issue on this appeal on the question of the liability of the appellants is whether or not the statutes in question are applicable to the appellants under the facts of this case, and, if applicable, whether or not the appellants, on the occasion in question, gave the requisite precautionary signals. This makes pertinent a brief statement of the evidence bearing upon this issue.

We consider first the testimony from which it may be determined whether the facts of the case at bar are such as to make applicable to the appellants the precautionary statutes in question, and to impose upon them the duty of compliance therewith on the occasion of the collision. R. T. Hurst, a witness for the plaintiff, testified that he was sitting in the Twentieth Century Cafe, located on the north side of the highway and on the west side of the railroad tracks and about 150 feet from track No. 3; that he was sitting where he could look out the vestibule window looking east; that the door was partly ajar; that he saw the deceased approaching the crossing and heard the rumble of the train but did not hear the train whistle; that when he saw the deceased, the latter was about 75 feet from the west track and was traveling in the direction of the crossing at the rate of 20 to 30 miles an hour; that when he saw the deceased approaching the crossing, he got up and went on the outside of the cafe and then heard the train blow for the first time; that the deceased was then about 20 feet from the west track; that the deceased continued to approach the crossing, and on reaching the crossing, struck the back of the engine with the front of his truck; that the train was running 50 to 75 miles per hour and travelled approxi-

mately 1,200 feet after the collision. Dallas Kirk, a witness for the defendants, testified that he saw the deceased just before the accident and that at that time the deceased was close to the main line track and was traveling about 15 miles an hour, and did not slow down, and that when the deceased reached the crossing, his truck struck the big drive wheel of the engine. James Alton Scott, a witness for the defendants, testified that when he first saw the deceased, he was between the main line and the second track and that he did not stop or slow down and when he reached the crossing, he struck the engine at one of the drive wheels. B. L. Robinson, a witness for the defendants, testified that the truck was not on the crossing when the engine got to the crossing, but that it would be hard for him to explain whether the truck struck the engine or the engine struck the truck. Sam King, the engineer for the Illinois Central Railroad Company, and one of the defendants, who was riding in the engine and operating the same and in a better position to observe the location of the engine and the truck with respect to the crossing at the time of the collision, testified that his engine was on the crossing when he first saw the pickup truck, and that the truck was then coming right against the engine, about 10 or 15 feet from the engine, and was traveling about 20 to 25 miles an hour; that the train was traveling 35 to 40 miles per hour; that the truck struck the pilot beam and the cylinder of the engine right at the front end, and that he applied his emergency brakes as soon as he saw the truck. C. P. Hill, the brakeman on the train and a witness for the defendants, testified that he was riding on the engine with the engineer and with W. G. Hyde, the fireman, and that his first awareness of anything happening was when he heard the engineer say, ''we are going to hit him.''

It is manifest from the foregoing testimony that the truck and the engine arrived at the crossing at approximately the same time. Thus the facts of the case at bar

distinguish it from the case of Southern **Ry. Co. v. Simp**-son, supra, and McCampbell v. Central of Ga. Ry. Co., supra. The decision in each of these cases was based upon a showing that the automobile ran into the side of the train at a time when the train was actually occupying the crossing. In the Simpson case, the proof for the railroad company tended to show that the automobile ran into the ninth car of the train. In the McCampbell case, the proof for the railroad company showed that the automobile ran into a freight car. Based upon the showing that the train was actually occupying the crossing, and that the automobile ran into the side of the train, the Court held in these cases that the precautionary statutes here under review were not applicable. In the Simpson case, however, the court made the following significant statement: ''Whether subsection (3) applies in any case where the collision or accident does not happen to an object in front of the train, we need not decide.''

Further, in the case of Southern Ry. Co. v. Koger, (C. C. A. 6th) 219 F. 702, the Court said: ''Defendants insist, however, that subdivision (3) applies to the case only where the person collided with appears as an obstruction upon the track ahead of the train; in other words, to a striking by the front of the train. This question is important, for we scarcely think that the evidence justified a finding that the decedent appeared as an obstruction on the track, or within striking distance ahead of the train. We agree with the learned district judge that the statute should not be so narrowly construed. It is true that the majority of the cases in which the statute has been applied have arisen either under subdivision (2) or subdivision (4); and, quite naturally, under subdivision (2) the person struck has usually appeared as an obstruction upon the track or within striking distance ahead of the train. But the construction contended for would require the interpolation in both subdivisions (2) and (3) of the clause (found in

subdivision (4)), 'when any person, animal, or other obstruction appears upon the road.'"

In view of the proof in the case at bar from which it manifestly appears that the truck of the deceased and the locomotive of the train arrived at the crossing almost simultaneously, or approximately at the same time, we are of the opinion that the Simpson case and the McCampbell case are not controlling of the case at bar, and that the precautionary statutes heretofore referred to were applicable to the defendants, Illinois Central Railroad Company and its engineer, Sam King, and imposed upon them the duty of compliance therewith on the occasion of the collision in question.

The trial court submitted to the jury for their determination the question whether the appellants sounded the whistle and the bell at least one mile before reaching the corporate limits of the Town of Selmer, as required by subsection (3) of Section 2628 of the Tennessee Code. We are of the opinion that the court was amply warranted under the evidence in submitting this question for the determination of the jury. Dallas Kirk, James Alton Scott, and L. W. Miller, witnesses for the defendants, testified that they heard the train first sound the whistle when it was about at the Gulf Plant, which the proof shows without dispute is located in the city limits of Selmer, north of the highway. B. L. Robinson, a witness for the defendants, testified that he heard the train blow before it got in sight, but that he was unable to say where the train was when he first heard it blowing. W. G. Hyde, a witness for the defendants, testified that the whistle was first blown at approximately one mile north of the depot, and like testimony was given by C. P. Hill, a witness for the defendants. T. W. McBride, a witness for the defendants, testified that he heard the whistle of the train but could not tell where the train was at that time. Sam King, the engineer and one of the defendants, and the man who actually sounded the whistle and the bell, testified that he first sounded the

signals when the train was one-half mile north of the
Brown Shoe Factory. It is undisputed in the evidence
that the Brown Shoe Factory is located north of the
highway and within the city limits. ▆▆ ▆ The sound-
ing of the whistle and the bell at a distance of one mile
north of the depot, as testified by the witnesses W. G.
Hyde and C. P. Hill, was not a compliance with subsec-
tion (3), since that section as construed by the Supreme
Court of Tennessee requires that the signals be sounded
a distance of one mile from the corporate limits of the
town and not a distance of one mile from the depot or
station. Illinois Central Railroad Co. v. Davis, supra;
Webb v. Railroad Company, supra.

▆▆ ▆ The other witnesses, with the exception of the
defendant Sam King, were indefinite in their testimony
as to where the train was when the signals were first
sounded. The defendant, Sam King, however, who ac-
tually sounded the signals, located the train at the time
at a point one-half mile north of the Brown Shoe Factory,
which is located within the city limits, and from this
testimony, it inescapably appears that the signals were
not sounded one mile from the corporate limits of the
town. At any rate, in view of this testimony, we think
it can not be successfully maintained that the trial court
erred in submitting to the jury for its determination
the question whether the appellants on the occasion in
question complied with subsection (3) of the statute.

The question next arises whether the appellants com-
plied with subsection (4) of the statute, providing that
"every railroad company shall keep the engineer, fire-
man, or some other person upon the locomotive, always
upon the lookout; and when any person, animal or other
obstruction appears upon the road, the alarm whistle
shall be sounded, the brakes put down, and every possi-
ble means employed to stop the train and prevent an
accident." In the case of Majestic v. L. & N. R. Co.
(C. C. A. 6th), 147 F. 2d 621, the word 'obstruction"
as used in the statute was construed to mean that which

may obstruct and injure the free and safe passage of the train or that which may receive an injury or damage if run over by the train, as in the case of a person on the road, or near enough to the railroad to be within striking distance of a train. It was further said in the Majestic case that the duties of those in charge of a train to observe the requirements of the statute are not confined to the very time the accident occurs, but that such duties commence when the obstruction appears upon the road, and that the road, in contemplation of the statute, is not merely what is called the roadbed or track but also includes the approaches thereto and that it is the duty of the lookout to view the whole road within the orbit of his vision. The engineer testified that he was keeping his eyes on the track ahead on which the train was running. He admits that he did not see the truck of the deceased until his engine came upon the crossing, at which time, the truck was 10 or 15 feet from the engine. C. P. Hill, a witness for the defendants, who was riding on the engine with the engineer, heard the engineer exclaim immediately before the collision, ''we are going to hit him,'' at which time the engineer applied his emergency brakes. Mr. Hill further testified that as the train approached the crossing there was a clear view from the engine to the crossing for a distance of 150 feet, and that the engineer could have seen Mr. Swinea if he had been looking, but that the engineer also had to watch the semiphore board and the block signals. That the train was traveling at a fast rate of speed is indicated by the undisputed testimony that, with the emergency brakes applied, it ran 1,200 feet after the collision.

In view of this testimony, we think that the trial court was amply warranted in submitting to the jury the question whether or not the appellants complied with subsection (4) of the statute. According to Mr. Hill, the view ahead was visible for 150 feet before the train reached the crossing. The jury was well warranted in finding that if the engineer had been keeping the proper lookout

as required by the statute, viewing the crossing ahead and the approaches thereto, all within the orbit or range of his vision, he would have observed the deceased approaching the crossing at a time when the engineer was at a distance of 150 feet from the crossing, and that had he then immediately applied his emergency brake as the statute requires, the collision might have been avoided.

In the case of Southern Ry. Co. v. Cooper (C. C. A. 6th), 245 F. 857, the Court said: ''While plaintiff's decedent was walking on the railroad track, he was struck and killed by a train approaching from behind. His administrator recovered in the court below judgment for the money value of his life. Upon motion for a new trial, the District Judge thought that all questions of error in the charge regarding the precise rules of liability were made immaterial by the conceded fact that the engineer, if he had been looking ahead, could and would have seen the deceased 150 feet away; that, in that event, the engineer could have blown the whistle, and the decedent could have stepped out of danger; but that the engineer did not look and did not sound the whistle. The District Judge thought that these facts demonstrated a clear liability, under the Tennessee Precautions Act (subsection 4, Sec. 1574, Shannon's Code). With this conclusion, we agree.''

 █ It follows from what we have heretofore said that we are of the opinion that the trial court committed no error in denying the request of the appellants for a peremptory instruction.

 █ The appellants complain that the trial court erred in overruling their motion at the close of the appellee's evidence to exclude the evidence and direct a verdict for appellants. It is well settled under the decisions of this Court that the introduction of evidence by the appellants, after the rejection of their motion, constituted a waiver of any right of the appellants to complain of the trial court's ruling. Dixie Drive-It-

Yourself System v. Matthews, 212 Miss. 190, 54 So. 2d 263; Frisby v. Grayson, 216 Miss. 753, 63 So. 2d 96.

The appellants further assign as error that the trial court erred in permitting the witness W. E. Swinea, son of the deceased, to testify with regard to the relationship between the deceased and his children. It is true that under the decisions of the Tennessee courts a recovery can not be had for loss of society and companionship as an element of damages, and the objection to the aforesaid testimony should have been sustained. However, the court instructed the jury that they were not permitted to make any award for loss of society and companionship, hence we are of the opinion that the admission of the testimony complained of was not prejudicial and, therefore, does not constitute **reversible error.**

The appellants contend also that the trial court erred in refusing their request for certain instructions seeking to authorize the jury to deny recovery in the event the proof showed the deceased to be guilty of contributory negligence. Contributory negligence is not a defense under the Tennessee decisions, although the jury may apply the same in reduction of the damages. Majestic v. Louisville & N. R. Co., supra. The record discloses that the jury were peremptorily instructed that the deceased was guilty of contributory negligence. It is manifest from the size of the verdict that the jury applied the contributory negligence of the deceased in the reduction of damages.

Appellants further contend that the court was without right to enter a judgment against the Illinois Central Railroad Company and its engineer, Sam King, on the verdict which was returned. The jury's verdict read: "We the jury find for the plaintiff and assess his damages at $2,000." The case was submitted to the jury solely on the question of the liability of the Illinois Central Railroad Company and its engineer in failing to give the statutory signals. No issue as to the liability of the Gulf, Mobile & Ohio Railroad Company was sub-

mitted to the jury. Thus the sole parties as against whom a verdict might have been rendered were the appellants. No objection was made by the appellants at the time the verdict was returned to the form of the verdict, nor was there any request by the appellants to have the verdict re-formed. The evidence and all of the proceedings in the case, as well as the instructions to the jury, made it clear that the intention of the jury was to render a verdict against the Illinois Central Railroad Company and its engineer. The court accordingly entered judgment against the Illinois Central Railroad Company and Sam King, and, in our opinion, the court was correct in so doing. In the case of Johns v. State, 78 Miss. 663, the Court said: ''The evidence and all the proceedings in this case may be looked at in order to ascertain the intention of the jury and when that is discovered, it is the duty of the court to give it effect. 28 Am. & Eng. Ency. L. (1st ed.) 254, et seq.'' We think that the trial court correctly ascertained the jury's intention to render a verdict against the Illinois Central Railroad Company and Sam King, and that he was correct in giving such effect to the verdict and entering judgment accordingly.

The appellants have set forth innumerable other assignments of error. To discuss each separately would unduly prolong this opinion. We have, however, carefully examined and considered each and every assignment of error urged by the appellants on this appeal, including the court's action in granting certain instructions and refusing certain instructions and in his rulings upon the admissibility of testimony, and we find no reversible error therein.

Upon a careful review of the entire record, we have reached the conclusion that it is free from reversible error and that the judgment of the court below should be and it is affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Kyle* and *Gillespie, JJ.,* concur.