STATE FARM MUT. AUTO. INS. CO. *v.* McKAY.

Division B.  Nov. 6, 1950.

No. 37588  (48 So. (2d) 349)

708

Williams **S. Murphy,** and **Lipscomb & Ray,** for appellant.

**O. F.** and **J. O. Moss,** for appellee.

714

**Hall, J.**

On September 15, 1948, McKay Motors, a partnership firm composed of appellee and his son, R. C. McKay, sold to Don Breland a new Kaiser automobile. The transaction was evidenced by a conditional sale contract showing a cash payment of $850.00 and a balance payable in 24 consecutive monthly installments of $86.20 each beginning one month thereafter. The form used in the preparation of this contract was a printed contract used ordinarily by C. I. T. Corporation and it was contemplated that that company would purchase the contract from McKay Motors, but in a few days it declined to handle the paper and it was then purchased by and assigned to R. M. McKay individually. The first three monthly installments were paid in due course but default was made on the payment due in January 1949 after which nothing was paid on the contract except a portion of one installment. The paper was placed in the hands of an attorney for collection and according to the terms of the contract

there thereby became due thereon a reasonable sum as attorney's fees for as much as 15% of the balance due if that amount is allowed by law.

On September 17, 1948, when R. M. McKay purchased the contract, he obtained from appellant a policy of insurance on the automobile in question showing Don Breland as owner and R. M. McKay as mortgagee or conditional vendor, with loss, if any, payable to said parties as their interests might appear. The policy insured the automobile at the time of loss or damage to the amount of the full cash value thereof less $100.00 deductible. It should be here noted that this policy was on a regular printed form of appellant providing for eight different types of coverage, designated therein as "A" to "H" inclusive, and each of these separately had various conditions, provisions and limitations applying to its own coverage but not applying to all the other items of coverage. The first page of the policy shows that the only coverages for which premiums were paid are those designated as "D" and "G". We are here concerned only with the latter which reads:

"Coverage G—Deductible Collision or Upset. To pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, caused by collision of the automobile with another object or by upset of the automobile, but only for the amount of each such loss in excess of the deductible amount, if any, stated in the declarations as applicable hereto."

In the latter part of March 1949 appellee obtained from Don Breland the possession of said automobile. Appellee testified in his own behalf that he had an agreement with Breland to place the car on the used car sales lot of McKay Motors and undertake to sell it with the understanding that out of the proceeds of sale he would retain the amount due him under the aforesaid conditional sale contract and pay the remainder of the proceeds of sale to Breland. Breland testified to substantially the same effect as a witness for appellant. While the car was on

this sales lot it was loaned on April 4, 1949, to a customer of McKay Motors for temporary use while his automobile was undergoing repairs in its shop. There was no cash consideration for this loan of the car. On the following day while this customer was using the car it was upset, wrecked and demolished while attempting to negotiate a curve in a public highway.

Appellee made claim to appellant under the aforementioned policy for the damage resulting from the wreck and upon a denial of liability brought this suit to recover the same and obtained a judgment for $1700.00 from which this appeal is prosecuted.

The defendants named in the declaration were the appellant herein and also Don Breland. A copy of the conditional sales contract and also a copy of the policy were filed as exhibits to the declaration. Appellant demurred to the declaration on two grounds, viz., that the declaration states no cause of action against appellant because the policy shows that it was not applicable to the loss sustained, and because there was a misjoinder of parties. The second ground passes out of the picture because Don Breland, on his own motion, without objection from either of the other parties, was dismissed from the suit before a hearing of the demurrer, leaving only appellant and appellee as parties to the suit. Furthermore, under our statute relating to misjoinder of parties defendant, this point should have been raised by plea or notice thereunder and not by demurrer. Section 1458, Code of 1942, and annotations thereon.

Under the first ground of demurrer appellant quotes a portion of one paragraph of the policy to the effect that the insurance does not apply to any person or organization operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operations thereof, and argues that under this provision there was no coverage in favor of appellee, but appellant overlooks the fact that the first portion of

the very paragraph from which the stated limitation is taken provides specifically that this limitation or condition applies only to the insurance for bodily injury liability, property damage liability, and medical payments, which are under coverages "A", "B", and "C", of the policy and has no application to coverage "G", which is the coverage under which recovery is herein sought, being only for damage to the insured automobile as a result of upset or collision thereof. In our opinion the demurrer was properly overruled.

Appellant's second point is that the trial court erred in overruling its motion to transfer the cause to the chancery court. There is no merit in this assignment for the reason that, even if we should be of the opinion that the cause should have been transferred, we are expressly prohibited by Section 147; Constitution of 1890, from reversing the judgment on that ground. Federal Compress & Warehouse Co. v. Coleman, 143 Miss. 620, 109 So. 20; Bullock v. Hans, 208 Miss. 41, 43 So. (2d) 670.

The next point is that the lower court erred in denying appellant's motion to exclude all the evidence and grant it a peremptory instruction at the close of appellee's evidence. We cannot consider this assignment because the record shows that after overruling of said motion the appellant proceeded to introduce evidence in support of its defense. By this action it waived the question now raised. Hairston v. Montgomery, 102 Miss. 364, 59 So. 793.

It is next argued that the lower court erred in refusing appellant's request for a peremptory instruction at the close of all the evidence. It is contended that there was a repossession of the automobile by R. M. McKay when he placed it on the sales lot for resale as a used car, and that this changed the title and ownership of the car contrary to the provisions of the policy, but the point is not well taken for the reason that the third paragraph of the insuring endorsement appearing as page 1 of the

policy specifically provides that the mortgagee or conditional vendor is fully protected under coverage "G" to the extent of his interest "and this insurance as to such additional interest shall not be invalidated by . . . any change in the title or ownership" of the automobile.

It is further contended in this connection that the use of the automobile under the terms of the policy was limited to pleasure and business purposes and that there is no liability in this case because it was being used for commercial purposes. The policy defines all these terms as follows: "(a) The term 'pleasure and business' is defined as personal, pleasure, family and business use. (b) The term 'commercial' is defined as use principally in the business occupation of the named insured as stated above, including occasional use for personal, pleasure, family and other business purposes." There is no evidence whatever in this case that the automobile was used principally in the business occupation of either Don Breland or McKay Motors. The proof shows that Breland had bought another automobile in January 1949 and that he did not thereafter use the car here in question, but stored it at his home and removed the battery therefrom so that it was completely out of operation until McKay put another battery in it and removed it to the used car sales lot where it remained on display for sale until the day prior to its destruction at which time it was temporarily loaned for a brief period to the customer of McKay Motors. Measured by the definition specifically set out in appellant's policy it was not being used for commercial purposes in violation of the insuring agreement, and appellant's contention to the contrary is without merit.

Much is said in the briefs for both parties pertaining to a conversation between appellee and the agent who wrote the policy wherein appellee, shortly after the car was moved to the sales lot, notified the agent that the car was back in his possession for sale and requested an endorsement to show the proper status. The agent admitted that appellee told him of the above mentioned

agreement with Breland whereby out of the proceeds of sale appellee was to receive the full amount of the indebtedness due him and Breland was to receive the balance, if any. The agent further admitted that with this information he advised that the policy simply be allowed to "stand like it is", and consequently no endorsement was placed on the policy. It is argued by appellant that the conversation between appellee and its agent was an effort to change the terms of the policy by an oral agreement contrary to its provisions. We do not so construe the situation. Even if there had been no such conversation the policy, according to its terms, was still in full force and effect and appellee was fully protected against damage by upset to the extent of the indebtedness due him by Breland.

██ Appellant also argues under its assignment of error regarding the refusal of its requested peremptory instruction that appellee gave no written notice of the loss. Again the appellant has confused the several coverages for which the policy provides. Written notice of accident is required only under coverages "A", "B", and "C", according to paragraph 1 under the subject of "Conditions". In paragraph 8 under the same subject, which pertains to coverage "G", it is provided that "When loss occurs the named insured shall . . . give notice thereof as soon as practicable to the company or any of its authorized agents." It will be noted that written notice is not required and any kind of notice will suffice under coverage "G" upon which this suit is based. The declaration alleged that appellant "was immediately notified by plaintiff of such loss." Appellant's answer thereto admitted "that it was notified by plaintiff of such damage or upset." The agent who wrote the policy, and who was not only a local agent but also a district agent of appellant, testified that he was promptly notified of the loss, that he investigated the same, obtained estimates of the cost of repairing the damage, and, upon finding that the amount was in excess of his authority to adjust,

made a written report to the company. Certainly there is no shadow of merit in appellant's position regarding notice of the loss, and, after giving due consideration to all of its contentions we are of the opinion that its requested peremptory instruction was correctly refused.

The next assignment argued by appellant is that the trial court erred in granting a peremptory instruction to appellee as to liability. On this question there was no substantial conflict in the evidence. Under the terms of the policy appellant was clearly liable for the damage and consequently there was no error in so charging the jury.

The last assignment argued is that the trial court erred in granting appellee the following instruction:

"The court instructs the jury for the plaintiff that the plaintiff is entitled to recover in this case the full amount due him under the conditional sale contract at the time of the upset wreck, provided said amount does not exceed the reasonable value of said automobile at the time of the upset wreck; and that in arriving in said sum to be awarded, you should allow the total amount of the unpaid notes, and if you believe from a preponderance of the evidence that the conditional sale contract was placed in the hands of an attorney for collection prior to said wreck, then you should add to said sum a reasonable amount as attorney's fee not exceeding 15% of the amount of the balance due under the contract monthly payments, provided the total amount of your verdict shall in no event exceed the total loss caused by the wreck less the sum of $100.00 deductible under the insurance policy, and also less $50.00 salvage of said automobile."

■■■ Appellant first says that this instruction tells the jury they must first determine the full amount due appellee under the conditional sale contract and return a verdict against appellant in that amount. The instruction is couched in simple language and plainly tells the jury that their verdict shall in no event exceed the total loss caused by the wreck less the sum of $100.00

deductible under the policy and also less $50.00 salvage. The appellee's evidence showed that the value of the automobile immediately before the wreck was $2,000.00 and that immediately thereafter it was worth $40.00 to $50.00 salvage. No witness placed the salvage value at more than $50.00. Under this evidence, after taking off the $100.00 deductible under the terms of the policy, the jury could have fixed any figure up to $1850.00 as to total amount of the loss. The instruction further told the jury, however, that appellee could only recover the amount due him under the conditional sale contract, which was entirely proper and correct. Appellee's evidence was that the balance due him on the monthly installments was $1652.20; that prior to the wreck and prior to the time when he obtained possession of the car he had placed the contract with an attorney for collection and that he had incurred a liability of $250.00 as attorney's fees, so that the amount due him on the contract, which provides for the payment of a reasonable attorney's fee, was a total of $1902.20. This evidence is undisputed. The verdict was for $1700.00 which is less than the amount due and also less than the amount of the loss. Appellant cites numerous authorities to the effect that attorney's fees are not allowable in a suit upon an insurance policy in the absence of a policy provision to that effect, but those authorities are not in point on the question here presented. The appellant by its policy in this case agreed to pay the appellee the full amount due him under the conditional sale contract up to the actual amount of the damage to the car less $100.00 deductible. That is exactly the issue which this instruction submitted to the jury and we find no error therein. The judgment of the lower court is accordingly affirmed.

Affirmed.