Trunzler *v.* Shanks

No. 40951          December 15, 1958          107 So. 2d 110

*Roger C. Landrum,* Columbus, for appellant.

*Sams & Jolly,* Columbus; *L. W. Brown,* Starkville, for appellee.

McGehee, C. J.

This suit was brought by the appellee Mrs. Kathleen Shanks as the Mother and sole heir-at-law of her nineteen

year old Son, Jerry Smith, deceased, who sustained an injury on June 7, 1956, while working as a farm laborer for the appellant J. J. Trunzler, when he pulled a pole down with a tractor and cable, causing the same to strike him on the head, and from which injury Jerry Smith died on September 19, 1956, following a long period of hospitalization.

The appellant J. J. Trunzler, at the time complained of, was engaged in dairying and farming on a tract of land consisting of approximately seven hundred acres located between the Town of Artesia and the City of Columbus in Lowndes County, Mississippi. There was a line of twelve or fourteen poles standing in the field or pasture which had formerly been used to suspend a telephone wire. These poles were shown to be about twelve to fourteen feet in height above the ground and to be about four inches in diameter, and some of them were badly decayed at and beneath the surface of the ground. Prior to June 7, 1956, the appellant had personally removed two of the poles from the ground by hand and had carried each of them away on his shoulder, without assistance.

On the morning of June 7, 1956, the appellant assigned to Jerry Smith and other members of a crew the task of piling limbs and tree trunks together in order that they might be burned. Wayne Bolan was the foreman to supervise that particular work, and Jerry Smith, who was a good hand at operating the tractor, was to operate the same in the work of assisting in pulling the limbs and tree trunks together to be burned (evidently meaning such of the limbs and tree trunks as could not be removed by the other laborers with their hands.)

The appellant had also engaged the services of one McKinley Sanders, a Negro about twenty-nine years of age, to do some painting about the farm, and on that morning, before the appellant left for Columbus where he remained from one and a half to two and one-half

hours, he told Sanders "to get up two of the poles from the ground" and take them out to the road that day for use in suspending a sign that he was putting up to designate the name of the farm as "Green Pastures." He did not designate which poles he desired Sanders to remove from the line of poles in the field or pasture for that purpose. He told Sanders before he left for Columbus that if he needed any help "to get one of the boys", (meaning one of those who was working under the foreman Wayne Bolan), to assist him but without designating whom he was to get to help him. Sanders was introduced as a witness for the plaintiff and testified, among other things, that "He told me to go out there and get two poles up out of the ground," and "Put them up side the road for to put a sign up 'Green Pastures,' " and further that "I had got one up and I tried to get the other one up and I couldn't get it up and then I went and got Jerry with the tractor to pull the other post up. He backed the tractor up to the post. I fastened the chain around it and pulled it and the post broke off in the ground and struck him back of the head and he fell over on the tractor." He was then asked: "About how long was that chain when you hooked it around the pole from the tractor? A. Six. G. Was it as long as a cross tie? A. No, sir, it wasn't quite right eight feet long. Q. You say it was about six feet long? A. Yes, sir." He was then asked: "Why did you pick Mr. Jerry Smith?" and answered: "Well he was on the tractor and was pulling the logs." He further testified: "Q. How many poles were standing up out there in the pasture? A. I don't know, sir, because I didn't count them. Q. Was it several other poles there? A. Yes, sir, a gang of them out there. Q. Could you look at the pole down at the ground, tell us how it looked down there? A. Well far as I could see of the poles it was solid but down up under the ground I don't know, sir. Q. This first one you got up, how did—just tell the jury how you got it up? A. I

just shaken it until it got loose in the ground and put my arm around it like this and pulled it up. Q. You kind of bear-hooked it and raised it out of the ground after you loosened it? A. Yes, sir.''

As to the second pole he said: ''Well I tried and I couldn't get it and then I went and got the boy on the tractor. Q. Now when this tractor was hooked to that pole and it pulled the pole down, was the pole rotten under the ground or not? A. Yes, sir, it was rotten a little bit. Q. Did it break off? A. Yes, sir, it broke off in the ground. Q. In the ground? A. Yes, sir. Q. What did Mr. Trunzler, how did he tell you to get the pole? A. He didn't say no certain way to get them. He just told me to go out there and get them.  * * *  Q. Which would have been the best way to have gotten the poles? A. Saw them down. Q. With what? A. A saw. Q. Did you have a saw there on the place? A. No, sir, I didn't have no cross-cut saw but I had one of these little old handsaws.''

The proof further disclosed that there was a handsaw available, and also an axe, and Sanders necessarily had to admit that he had used a handsaw in the past to saw a piece of timber larger than this pole and that he had on former occasions chopped down trees larger than this pole with an axe.

But this case was tried on an incorrect legal theory. As grounds of negligence on the part of the appellant the declaration alleges that ''The defendant well knew that the said Jerry Smith, deceased, was a minor and mentally deficient and not fully capable of making decisions as would be a grown man;'' that ''Nevertheless, the defendant ordered and directed said Jerry Smith, deceased, to take a tractor which was owned by the defendant, and use same along with a cable to pull down certain large poles situated on the farm of the defendant.'' But there was no proof whatsoever that Jerry Smith was mentally deficient or that he was not fully capable of

knowing what he was doing, and of making the proper decision in regard thereto. In fact, the proof disclosed that Jerry Smith was nineteen years of age and had finished the seventh or eighth grade at school, had experience in doing farm work, was a good worker, received the same wages as his companions, and that he had previously operated a tractor properly and well. The declaration also charged as a ground of negligence that the defendant negligently refused to furnish Jerry Smith ''a safe place in which to work and safe and proper equipment with which to do his work.'' However, the proof showed without dispute that the equipment furnished Jerry Smith was safe and suitable for the purpose for which it was to be used, and that the place was safe except for the danger created by Jerry Smith and McKinley Sanders when they undertook to pull the pole down toward Jerry Smith by the use of the tractor and cable.

■■■ There was a material variance between the allegations and the proof, and there was neither a motion made by the plaintiff to be allowed to amend the declaration so as to charge that the defendant had left it to the judgment of Sanders to determine the method for removing the pole, nor was there any objection by the defendant to the evidence offered by the plaintiff under the erroneous theory upon which the case was tried. There was no charge that the defendant constituted Sanders his agent to act for him in choosing the dangerous method employed by Jerry Smith and participated in by Sanders in removing the pole. There was nothing complex or dangerous about this assignment, except for the method employed for its accomplishment.

The appellant made a motion for a directed verdict at the conclusion of the testimony introduced by the plaintiff. This motion was overruled and the defendant proceeded to offer witnesses in his own behalf, and did not renew the motion at the conclusion of all of the evi-

dence. Nor did he request a written peremptory instruction to the jury.

In the case of I. C. R. R. Company, et al. v. Perkins, Admr., 223 Miss. 891, 79 So. 2d 459, the Court said: ''The appellants complain that the trial court erred in overruling their motion at the close of the appellee's evidence to exclude the evidence and direct a verdict for appellants. ■■ ■ It is well settled under the decisions of this Court that the introduction of evidence by the appellants, after the rejection of their motion, constituted a waiver of any right of the appellants to complain of the trial court's ruling. Dixie Drive-It-Yourself System v. Matthews, 212 Miss. 190, 54 So. 2d 263; Frisby v. Grayson, 216 Miss. 753, 63 So. 2d 96.'' See also Aponaug Manufacturing Company v. Collins, 207 Miss. 460, 42 So. 2d 431; State Farm Mutual Auto Insurance Company v. McKay, 209 Miss. 706, 48 So. 2d 349.

■■■ The sole ground upon which the defendant could be held liable, if at all, was that he constituted Sanders his agent and left it to his judgment as to what means should be employed to remove the pole in question; and it would be a question for the jury as to whether the danger was so obvious as to constitute negligence of Jerry Smith the sole, proximate cause of his injury and death, that is to say, whether or not the use of the tractor and the short cable was such an utterly foolish and obviously dangerous method of getting the pole down that this young man should not have put the tractor in motion pursuant to the method adopted by Sanders, acting in the place and stead of the defendant, for the removal of the pole, and whether by so doing the young man's own negligence became the sole, proximate cause of the accident; or whether the defendant, acting through his agent or vice-principal Sanders, if shown to be such, was guilty of negligence and the said Jerry Smith was guilty only of contributory negligence.

■■ The instructions did not properly submit the issue, as above-stated, to the jury.

The verdict of the jury and the judgment of the court must therefore be reversed and the cause remanded.

Reversed and remanded.

*Hall, Lee, Holmes and Ethridge, JJ.,* concur.